**HARTFORD ACCIDENT AND INDEMNITY COMPANY, et al., Appellants,**

v.

**Elmer WIEKER, Respondent,**

**Lorraine Griep, Executrix of the Estate of Roy V. Griep, Defendant.**

**Nos. 48163 and 48357.**

Supreme Court of Minnesota.

June 30, 1978.

Thomas, King, Swenson & Collatz, George C. King and James J. Ryan, St. Paul, for Hartford.

John F. Scott, Jr., St. Paul, for appellants.

Schmidt, Thompson & Thompson, Willmar, Meagher, Geer, Markham, Anderson, Adamson, Flaskamp & Brennan, and John Richard Bland, Minneapolis, for respondent.

Heard by SHERAN, C. J., and YETKA and SCOTT, JJ., and considered and decided by the court en banc.

SHERAN, Chief Justice.

This is an appeal from a judgment of the district court.

Appellants, Minnesota Federal Savings and Loan Association (Minnesota Federal) and its insurer, Hartford Accident and Indemnity Company, instituted this action against Elmer Wieker to recover approximately $90,000 loaned to Shakopee Mobile Homes, Inc. It was pleaded that Wieker was obligated under a contract of guaranty executed on April 27, 1971, which contained this provision:

"This guaranty shall be a continuing one that may be terminated only by notice sent to [Minnesota Federal] by Registered Mail * * *."

Wieker's answer was a qualified general denial containing this allegation:

"The defendant, Elmer Wieker, on the 19th day of July, 1973, sold all of his interest (stock) in Shakopee Mobile Homes, Inc. to Roy V. Griep and Thomas Griep, and as of that date, the defendant, Elmer Wieker, through his attorney, revoked and cancelled that guarantee agreement * * * by placing written notice in the United States mails * * addressed to the plaintiff * * *.

"Further, in the year 1973, the defendant, Elmer Wieker, orally informed officials of the plaintiff, Minnesota Federal Savings & Loan Association, of his sale of interest, and revocation of his guarantee."

At trial it was established that the contract of guaranty had not been terminated by notice sent to Minnesota Federal by registered mail. In an apparent effort to establish that notice was given by regular mail and that such notice was the equivalent of that specified by the contract of guaranty, defendant offered as a witness Harald F. Hendricksen, who testified that, acting as Wieker's attorney, he had dictated a letter addressed to Minnesota Federal dated July 19, 1973, revoking the guaranty, which, in the normal course of office procedures, would have been sent through the mails to Minnesota Federal. After a weekend recess, during which time Hendricksen again searched his files, he acknowledged that the original of the letter terminating the guaranty might never have been dispatched. Wieker also introduced the following evidence to support his position:

(1) That at a point in time after the letter was prepared by Hendricksen, Jack Wilson, an employee of Minnesota Federal with whom Wieker was in regular communication, stated that Wieker was "off the paper";

(2) That Wieker not only terminated his interest in Shakopee Mobile Homes, Inc., as indicated in the letter, but was engaged in a competing business in Shakopee;

(3) That Wieker, in reliance upon Wilson's assurances, assumed that he had been released from the guaranty and took no further action to protect himself.

Upon the evidence introduced, the trial court made these critical findings of fact:

"7.

"That at the time Wieker made these inquiries of Wilson he (Wieker) thought the notice of cancellation of the guarantee had already been sent by his attorney and received by Minnesota Federal. Also, that at this time Wieker planned to set up another mobile home dealership in

Shakopee, separate from Shakopee Mobile Homes, Inc., only in the event that he would be assured by Minnesota Federal that he was no longer obligated under the guarantee in question. Further, that this new business would not have been started by Wieker unless he thought the guarantee had been effectively cancelled.

"8.

"That Wilson assured Wieker in July or August of 1973, that he was no longer obligated under the guarantee; that this assurance was overheard by two witnesses; that Wilson had the apparent authority to give this assurance to Wieker, and that Wieker relied on the representation of Plaintiff's agent Wilson and acted to his detriment by establishing a separate competing mobile home dealership in the City of Shakopee.

"9.

"That because of Wilson's statements to Wieker, the latter did reasonably conclude that it was not necessary to make any further inquiries relative to his intended cancellation of the guarantee, either to his attorney or to anyone else at Minnesota Federal. That if further inquiries had been made at that time (the time when Shakopee Mobile Homes, Inc., did not owe Minnesota Federal any debt) Wieker could then have sent the required written notice and still have avoided any obligation to the lending institution because the guarantee provided that either party could cancel the guarantee contract at any time."

In its attached memorandum, the trial court stated:

"Recognizing the rights created in the plaintiffs by the guaranty contract in the case at bar, the Court nevertheless is of the opinion that under the peculiar facts of the case the Doctrine of Equitable Estoppel requires that the matter be resolved in favor of the defendants."

Because the defense of estoppel was neither pleaded nor litigated by consent, however, a new trial of this issue is necessary.

Rule 8.03, Rules of Civil Procedure, provides:

"In pleading to a preceding pleading, a party shall set forth affirmatively * * estoppel * * * and any other matter constituting an avoidance or affirmative defense."

Rule 8.03 makes no distinction between the different species of estoppel recognized historically and, in our view, early Minnesota decisions to the contrary became obsolete when the rule was adopted.[1]

It is clear in this case that the doctrine of estoppel was not pleaded directly or by implication in Wieker's answer. The word "estoppel" was never mentioned, before or during the trial, and Wieker's attorney made no attempt at any time to amend the pleadings.

Although testimony regarding statements made by Minnesota Federal's employee, Wilson, and a description of the business actions taken by Wieker subsequent to this conversation, if accepted as true, could suggest the existence of an estoppel defense, the trial court erred in finding no unfair surprise. This evidence was also corroborative of Wieker's claim that he had requested his attorney to send a letter revoking the guaranty to Minnesota Federal; that Hendricksen had done so by regular mail; and that Minnesota Federal had accepted this communication in lieu of one sent by registered mail as specified by the contract. Therefore, it was relevant to the defense asserted in the pleadings that the letter sent by Hendricksen constituted substantial compliance with the terms of the guaranty and was accepted as such by the parties concerned. Under these circumstances, we do not believe that the trial court could reasonably find that the issue of estoppel was litigated by consent.

Equally significant is the trial court's finding that "Wilson assured Wieker in July or August of 1973, that he was no longer obligated under the guarantee." When Wilson, no longer employed by Minnesota Federal and now a resident of Wis-

1. See, e. g., *Bemis v. Pacific Coast Casualty Co.*, 125 Minn. 54, 145 N.W. 622 (1914).

consin, was called as a witness by Wieker, however, he was never asked the critical questions pertaining to the guaranty. Moreover, we are persuaded that plaintiffs did not cross-examine him on this important aspect of the case because at the time his testimony was adduced all parties saw the pivotal fact question in the case as being whether Hendricksen had carried out Wieker's instructions to revoke the guaranty by letter. Only after Hendricksen acknowledged that this letter had probably not been sent did Wieker's counsel argue the law of estoppel. By this time, Wilson was back in Wisconsin, outside the reach of judicial process. Because this turn of events denied plaintiffs the opportunity of presenting evidence, including that of Wilson, which could have been determinative of the issue, the court's evaluation of the evidence was incomplete and the interests of justice require a new trial.

Reversed and new trial granted.

OTIS, J., took no part in the consideration or decision of this case.