Lori **FONTAINE**, f.k.a. Lori Delude, Respondent,

v.

Richard **HOFFMAN**, Appellant.

No. C0–84–1383.

Court of Appeals of Minnesota.

Dec. 24, 1984.

Lori Fontaine, pro se.

James D. Erickson, Erickson, Erie, Odland, Fitzgerald & Reynolds, Crookston, for appellant.

Considered and decided by PARKER, P.J., and RANDALL and FORSBERG, JJ., with oral argument waived.

## OPINION

RANDALL, Judge.

This is an appeal from an order denying appellant Richard Hoffman's motion for reasonable visitation with his son, Cha Michael Delude. The child's mother opposed the motion. The trial court denied visitation due to the lengthy period during which Hoffman had not seen the child, and the existence of a stable stepfamily relationship which might be threatened by the visi-

tation of a father whom the child did not know. We reverse and remand.

## FACTS

Cha Michael Delude, born to Lori Fontaine on October 30, 1977, was adjudicated to be the child of Richard Hoffman by order dated September 18, 1980. Soon after the birth, Hoffman and Fontaine, who had never married, separated. Hoffman visited the child regularly for a year and a half, or until May 1979.

Hoffman last visited the child on May 20, 1979. Fontaine claimed that Hoffman stopped visitation on his own initiative. Hoffman claimed that he was told by James Fontaine not to visit the child. Lori Fontaine conceded that she may have prevented Hoffman from resuming visitation after he had stopped visiting. She stated, and the trial court found, that Hoffman last attempted visitation in March, 1980, when he came to her apartment around midnight, intoxicated.

The 1980 paternity order required Hoffman to pay 50 dollars per month child support. There was a provision for visitation in the order as follows:

6. It is suggest [sic] that defendant be provided reasonable visitation of the minor child, Cha Michael Delude.

Hoffman paid child support regularly from September 1980, to January 1982. He made those payments regularly even during a period Fontaine had conceded that she may have interfered with his visitation rights. He finally stopped making support payments in February of 1982, and claimed it was because he was not allowed to visit the child. As a result of the support delinquency, Fontaine brought a contempt motion against Hoffman. Following the contempt hearing, on August 10, 1983, Hoffman was found in contempt, with the order deferred upon Hoffman's making monthly payments, including a payment on the arrears.

Hoffman raised the visitation issue at the August 10 hearing, and the trial court issued an order to show cause against Fontaine on a contempt motion against her for

denial of visitation. Following a hearing, the court submitted the visitation matter for mediation by Polk County Social Services.

The attempt at mediation was unsuccessful. The trial court was so informed in April 1984, and scheduled a hearing on visitation.

At the hearing, besides the testimony of Fontaine and Hoffman, the court heard testimony from Hoffman's wife as to her willingness to assist with visitation. The Hoffmans, who had been married for 2 years and were expecting their first child, also presented testimony on the stability of their home and employment. Fontaine stated that her husband was not opposed to visitation, and conceded that they planned on telling the child at some point about his real father, but they did not feel it was the right time to do so, and preferred that the child himself elicit the information through his own questions.

Although Social Services mediation was unsuccessful in getting Fontaine and Hoffman to agree on visitation, its representative indicated she could see no reason why Hoffman should not get to know his son. After all the evidence was in, the trial court denied Hoffman's motion for reasonable visitation. The court made no mention of the support order, thus leaving it in effect.

### ISSUE

Was the denial of visitation in error?

### ANALYSIS

The trial court made four basic findings, which may be summarized as follows:

1. Hoffman had had no contact with the child for five years, and therefore, there was no "parent-child relationship;"
2. Hoffman's negligence was responsible for this lack of any relationship;
3. The child had established a stable stepfamily relationship; and
4. This stepfamily relationship would be threatened by visitation.

Since he was adjudicated the father, Hoffman's parental rights were the same as those applicable to divorced parents. Minn.Stat. § 257.541(2) (Supp.1983). Minn. Stat. § 518.175, subd. 1, provides as follows:

In all proceedings for dissolution or legal separation, subsequent to the commencement of the proceeding and continuing thereafter during the minority of the child, the court shall, upon the request of the noncustodial parent, grant such rights of visitation as will enable the child and the noncustodial parent to maintain a child to parent relationship that will be in the best interests of the child. If the court finds, after a hearing, that visitation is likely to endanger the child's physical or emotional health or impair his emotional development, the court may restrict visitation by the noncustodial parent * * * *and may deny visitation entirely*, as the circumstances warrant. The court shall consider the age of the child and the child's relationship with the noncustodial parent prior to the commencement of the proceeding.

(Emphasis added.)

The trial court found the requisite danger to the child's emotional health and development, and found that visitation was not in the best interests of the child. Appellant challenges the sufficiency of the evidence to support these findings.

 The trial court has broad discretion in deciding questions relating to visitation. *Manthei v. Manthei*, 268 N.W.2d 45 (Minn.1978). In determinations dependent on oral testimony, this court must defer to the trial court's assessment of the credibility of the witnesses and the weight to be given their testimony. *Serbus' Estate v. Serbus*, 324 N.W.2d 381 (Minn.1982). But, even accepting the trial court's determination that the long interruption of visitation was due to Hoffman's negligence rather than a refusal of visitation by the Fontaines, the record does not support the

court's total denial of visitation to the father.

■ A denial of visitation rights must be based on *persuasive* evidence that visitation will not serve the best interests of the child. *Griffin v. Van Griffin*, 267 N.W.2d 733, 735 (Minn.1978).

Respondent argues that *Griffin* is factually similar, and thus controlling. In *Griffin*, the father had not visited the child in over four years and had not made child support payments, although financially able to do so. In *Griffin*, the supreme court also noted the father's longstanding neglect and the threat of disruption to "the only family harmony and security the child has known," 267 N.W.2d at 735, that of the stepfamily. The child in *Griffin* expressed a desire for no visitation. Here, Cha Delude was never presented with a choice.

In *Griffin*, the supreme court also cancelled the father's obligation to pay child support when it denied visitation rights. The father had not made child support payments, although financially able to do so. Here Hoffman made child support payments for approximately sixteen consecutive months, stopped, and after being ordered by the court to resume payments, did so and was current at the time of the hearing. The court did not cancel Hoffman's support obligation. Because of the above differences, *Griffin* is not controlling.

The trial court's finding that the child's present stable stepfamily relationship would be threatened by visitation is unsupported by any persuasive evidence. There was no expert or objective testimony that visitation with his father would be harmful to the boy. Fontaine's statement that visitation would be harmful was unsupported. Hoffman's claim that he and his present wife have a stable home life and are concerned about his son's best interest was not refuted. His concern for his son's welfare is buttressed by the fact that he made child support payments for well over a year even without visitation and, after falling behind, re-established a pattern of regular child support.

Hoffman argued that the effect of the court's order was a de facto termination of his parental rights. The court made a finding in support of denial of visitation that Hoffman had had no contact with the child for five years. Yet, the effect of affirmance here would be to legally prolong what the trial court found to be a detriment.

Hoffman did attempt to explain his lengthy lack of visitation. He claimed he had backed away from Fontaine and their child's life because the child's mother was becoming involved with another man and he did not wish to create any problems. He also testified he was not sure what his legal rights were and he felt he had no real chance to establish visitation.

The Fontaines acknowledged that at some point they were willing to inform the child about his real father. This desire to postpone doing so until "the proper time" is not a persuasive reason for denying visitation. The court's finding that visitation would harm the child's stepfamily relationship was based on the unsupported statement of the mother. The social worker assigned to mediate the visitation dispute raised no objection to visitation, and she was the only witness in the trial other than Fontaine and the Hoffmans.

■ We acknowledge the neglect of visitation by Hoffman, but find it mitigated by his regular payment of support for over one year and his resumption of prompt support payments after his lapse. Even during his lapse in support payments, refusing to pay child support does not warrant denial of visitation unless the court so orders, just as denial of visitation is not grounds for refusing to pay child support unless the court so orders. *See, VanZee v. VanZee*, 302 Minn. 371, 226 N.W.2d 865 (1975).

Neither the child nor his parents deserve to be in limbo on the question of visitation, and affirming the denial of visitation would only prolong the uncertainty one more

year. Minn.Stat. 518.175, subd. 2 (1982) provides:

> Subd. 2. Upon the request of either parent, the court may inform any child of the parties, if eight years of age or older, or otherwise of an age of suitable comprehension, of the rights of the child and the noncustodial parent under the order or decree or any substantial amendment thereof. The custodial parent shall present the child for visitation by the noncustodial parent, at such time as the court directs.

Cha Delude turns 8 in October of 1985. If denied visitation now, Hoffman has a right next year to request to see his son and to ask the court to inform his son of his existence. (The parties agree that what visitation Hoffman did exercise prior to the lengthy lapse was at an age when the son would have been too young to have any clear memory of him.)

The visitation issue should be settled now by providing a schedule of reasonable visitation. In the future, should there be clear and convincing evidence that the visitation is proving harmful and it is in the best interests of the child to have his father's parental rights terminated, thus paving the way for adoption by his stepfather, that question can be properly addressed at that time. It is only conjecture now.

Unlike *Griffin*, the denial of visitation here would leave intact the father's duty to pay support. We are concerned with the equity of requiring payment of support where visitation is denied based on unsupported assertions of harm to the child, and the desire of the mother and stepfather to postpone informing the child concerning his real father.

### DECISION

The denial of appellant's motion for reasonable visitation is not supported by sufficient evidence. We reverse and remand to the trial court for a determination of reasonable visitation.

Reversed and remanded.