**UNIVERSAL LENDING CORPORATION, individually and on Behalf of First Street Companies, Respondents,**

**v.**

**WIRTH COMPANIES, INC., and Harry M. Wirth, Appellants.**

**Nos. CX–85–1711, C4–85–1719.**

Court of Appeals of Minnesota.

Aug. 19, 1986.

---

Michael A. Nekich, Lawrence J. Field, Leonard Street & Deinard, Minneapolis, for respondents.

Jerrold M. Hartke, St. Paul, for appellants.

Heard, considered and decided by RANDALL, P.J., and LANSING and HUSPENI, JJ.

## OPINION

LANSING, Judge.

Harry Wirth and Wirth Companies, Inc., appeal from a judgment determining that they owe respondent Universal Lending Corporation $499,000 resulting from the breach of a partnership agreement and their actions in operating the partnership business. We affirm in part, reverse in part, and remand.

## FACTS

In April 1983, Harry Wirth and California mortgage brokers Paul Feldman and Dan Christensen agreed to form a partnership to acquire, hold for investment and operate First Street Station, a Minneapolis restaurant. In May 1983 they formed First Street Companies, a partnership between two corporations: Wirth Companies, Inc., owned entirely by Wirth, and Universal Lending Corporation (ULC), owned by Feldman and Christensen.

The partnership agreement allocated a 55–percent interest to Wirth Companies and a 45–percent interest to ULC. The agreement authorized Wirth Companies to supervise the day-to-day management of the restaurant.

Wirth, Feldman and Christensen also signed a contemporaneous document that provided for a redistribution of the partnership shares if Wirth could not settle a mortgage foreclosure action brought by William Brady, a creditor, against Waterfront Companies, Inc., the corporation that owned the Milwaukee Road Depot property. Wirth was a majority shareholder in Waterfront Companies, and ULC believed that the dispute between Brady and Wirth might interfere with the First Street Station development. The agreement provided that unless Wirth settled the dispute within 60 days, ULC's interest in the partnership would be increased to 55 percent and Wirth Companies' interest would be reduced to 45

percent. Additionally, the agreement provided that ULC would assume management control of First Street Companies.

Wirth Companies managed the day-to-day operations of First Street Station from September 1983 to August 1984. The trial court found that Wirth and Wirth Companies breached the partnership agreement during this period by issuing numerous partnership checks of more than $5,000 without the required signatures of Feldman and Christensen, failing to send ULC requested monthly financial statements or itemized construction budgets, and incurring accounts payable far in excess of the per-supplier amounts authorized by the partnership agreement. The court also found that Wirth Companies did not pay Minnesota sales tax or file a 1983 partnership tax return, did not make payments on the employees' health insurance plan (which was then cancelled), and wrote numerous checks on the partnership checking and credit accounts, resulting in overdrafts which caused the bank to close the accounts. The court also found that Wirth took funds from the partnership for his own use and incurred unauthorized house charges for himself, friends and business associates.

Although the partnership hired a restaurant management service to receive invoices and generate checks to suppliers, Wirth did not send some bills to the service and declined to issue the checks to suppliers prepared by the service. ULC did not know that partnership bills were not being paid. Wirth also built an outdoor deck at the restaurant for which he held a "Grand Opening." ULC did not authorize these expenses and specifically instructed Wirth not to incur them.

ULC took over management of the partnership the day after the grand opening in August 1984. ULC then began this action seeking an accounting and dissolution of the partnership. It also sought damages for breaches of the partnership agreement, breaches of fiduciary duty, negligence, conversion and fraud.

The trial court found that ULC was the 55-percent owner of the partnership, and that Wirth and Wirth Companies had breached the partnership agreement, breached fiduciary duties, negligently managed the partnership and converted partnership funds. The court awarded a judgment of $499,000 to ULC, holding Wirth and Wirth Companies "jointly and severally" liable for that amount. The partnership was ordered dissolved and its assets liquidated.

Wirth moved for amended findings of fact or a new trial. That motion was denied, and Wirth appeals from both that order and the judgment. Wirth disputes the trial court's valuation of First Street Station, the determination of the percentage of ownership, the finding of negligent management, and the determination of Wirth and Wirth Companies' joint and several liability.

## ISSUES

1. Did the trial court err in determining the value of the partnership property or the partners' percentage of ownership?

2. Did the trial court err in refusing to apply the doctrine of equitable estoppel against ULC?

3. Did the trial court err in holding Wirth and Wirth Companies jointly and severally liable for the damages awarded?

## ANALYSIS

### I

*Valuation of Partnership Property*

■ The trial court found that the value of the property diminished $600,000 as a result of Wirth and Wirth Companies' actions. The property was appraised at $2.4 million when the partnership purchased it. Berge Hansen, a certified appraiser, testified that the property was still worth $2.4 million when ULC took over management of the partnership. However, he acknowledged that this appraisal was based on the assumption that the mortgage payment was current. When informed that the pay-

ments were more than three months in arrears, he stated that this would seriously affect his appraisal, but did not offer a new estimate of value.

Wirth testified that he believed the property was properly valued at $2.6 million, but acknowledged that he said in his deposition in November 1984 he considered the property to be "valueless." The trial court apparently inferred from this testimony that Wirth considered the market value of the property to be the outstanding mortgage plus the current debts of the business.

The trial court found the outstanding mortgage and the debts of the partnership to be $1.8 million. Faced with conflicting testimony, the trial court could properly credit Wirth's November 1984 valuation and reasonably find that the property was worth $1.8 million. *See Vreeman v. Davis,* 348 N.W.2d 756, 757 (Minn.1984) (a knowledgeable owner is competent to express an opinion on the market value of his property). The trial court then subtracted this amount from the original value of $2.4 million and concluded that the value had diminished by $600,000.

While Wirth claims that his deposition testimony was "sarcastic" and "tongue-in-cheek," this explanation was not made to the trial court until the time of post-trial motions. Even if Wirth's testimony was flippant, this affects only the weight and credibility of the evidence, determinations which are firmly committed to the trier of fact. *See Fontaine v. Hoffman,* 359 N.W.2d 692, 694 (Minn.Ct.App.1984) (in determinations dependent on oral testimony, deference must be given to trial court's assessment of credibility of witnesses and weight to be given their testimony).

The trial court's findings on valuation are sufficiently, although minimally, supported by the record. The only other appraisal evidence was seriously impeached, and the trial court's finding on dimunition in value is not clearly erroneous in view of the absence of evidence to the contrary.

### Percentage of Ownership

█ In the "Agreement to Settle Foreclosure Proceedings" ULC and Wirth Companies agreed that if Wirth did not "induce Brady to terminate foreclosure proceedings" within 60 days of the agreement, the ownership interest of Wirth Companies in the partnership would be reduced to 45 percent. Wirth and Wirth Companies argue that this provision is not controlling because of other language in the agreement. Although the agreement is not free of minor conflicts, the record supports the trial court's finding on the shift of ownership.

Brady testified through deposition that he did not terminate *any* of the foreclosure proceedings he had commenced against Wirth. ULC also introduced Wirth's prior testimony from March 1984 in United States Bankruptcy Court that Wirth Companies owned 45 percent of the partnership and ULC owned 55 percent. The trial court's finding on ownership is supported by the record and is not clearly erroneous.

### II

### Equitable Estoppel

█ On appeal, Wirth and Wirth Companies argue alternatively that if ULC was entitled to management control by the shift of percentage of ownership, they are estopped from asserting claims against Wirth and Wirth Companies for the time they could have managed First Street Station. Equitable estoppel, like all affirmative defenses, must be either pled under Minn.R. Civ.P. 8.03 or, if not pled, litigated by consent of the parties under Minn.R.Civ.P. 15.- 02. *See Hartford Accident & Indemnity Co. v. Wieker,* 269 N.W.2d 722, 724 (Minn. 1978).

Wirth and Wirth Companies asserted equitable estoppel for the first time in their post-trial motions. This clearly does not comply with Rule 8.03. Wirth and Wirth Companies provide no reference to any transcript or exhibit in the record that raises the issue of estoppel. The trial court did

not err in failing to make a finding on the issue of estoppel.

## III

### *Personal Liability*

The trial court found Wirth personally liable for ULC's damages resulting from breaches of the partnership agreement, breaches of fiduciary duty, negligent management and conversion. Wirth is an officer and sole shareholder of Wirth Companies. Wirth is not a partner under the agreement; only Wirth Companies, Inc., is a partner.

■ An officer and shareholder of a corporation cannot be held personally liable for the obligations of the corporation except in certain limited circumstances. An individual shareholder may be held liable for corporate obligations if the corporate entity is merely the "alter ego" of the shareholder and fundamental unfairness would result if the corporate entity were not disregarded. *See Victoria Elevator Co. v. Meriden Grain Co.,* 283 N.W.2d 509, 512 (Minn.1979). An officer or shareholder may also personally guarantee the obligations of the corporation.[1] Finally, an officer of a corporation may be liable for the corporation's conversion of another's property if the officer actually participated in the tortious transaction. *See Holzer v. Tonka Bay Yachts and Marine Sales,* 386 N.W.2d 285, 287 (Minn.Ct.App.1986), *rev. den.,* (Minn. June 30, 1986).

■ Most of the damages for which Wirth was held personally liable resulted from breaches of the partnership agreement. Only a party to the partnership agreement can breach it, and Wirth was not a partner or a party to the agreement. *See Mahoney v. McLean,* 26 Minn. 415, 4 N.W. 784 (1880) (action for breach of an agreement can only be maintained against a party to the agreement). While Wirth Companies may be liable for all damages resulting from its breach of the partnership agreement, these findings do not support a determination that Wirth is personally liable for these damages. Similarly, the court's conclusion that Wirth is liable for breach of a fiduciary duty apparently relates to partnership obligations. The court made no finding on a separate fiduciary duty of Wirth which would entail personal liability.

■ Wirth can clearly be held personally liable for his own acts of conversion of partnership funds. These include the unauthorized house charges, cash withdrawals and other acts of conversion by Wirth Companies in which he participated. *Holzer, supra.*[2]

■ The trial court based its finding of corporate and personal liability on a theory of negligent mismanagement, as well as breach of contract, breach of fiduciary duty, and conversion. Wirth and Wirth Companies did not challenge negligent management as a basis for recovery. The "informal" briefs submitted by each party do not provide authority for or against the existence of this theory, and we can find no authority for this cause of action. While actions for accounting and dissolution of a partnership are equitable actions, *Maras v. Stilinovich,* 268 N.W.2d 541, 544 (Minn. 1978), there must be some basis in the law for the relief granted.

The damages of $499,195.02 awarded by the trial court against the corporate partner, Wirth Companies, can be sustained on the theory of breach of the partnership agreement. The trial court's findings numbered 61 and 62 find personal and corpo-

---

1. In reviewing the record we note that it contains a document in which Wirth agreed to personally indemnify ULC for any loss ULC might incur as a result of any liabilities of the partnership. This document is not referred to in either brief, nor was it referred to in the court's findings of fact.

2. Generally, an action for conversion of partnership property, or any other claim at law, cannot be maintained by one partner against another where there has been no prior accounting or division of property. *Jacobs v. Jacobs,* 227 Minn. 451, 35 N.W.2d 611 (1949). Wirth and Wirth Companies did not challenge the inclusion of these claims in ULC's complaint for an accounting and clearly agreed to litigate them.

rate liability in the total amount of $19,-779.09 for conversion, unauthorized house charges and unauthorized cash withdrawals and provide a basis for personal liability against Harry Wirth. However, we cannot find support for Wirth's joint and several personal liability for the remaining damages either under a breach of contract or the tort of "negligent mismanagement." We therefore reverse $479,415.93 of the judgment against Wirth personally and remand to the trial court to determine what additional personal liability, if any, remains.

## DECISION

We affirm the judgment of $499,195.02 against Wirth Companies, Inc. We also affirm the joint and several liability of $19,-779.09 against Harry Wirth personally. We reverse the remainder of the judgment against Harry Wirth and remand to the trial court for a determination on whether Wirth is personally liable for the remaining damages.

Affirmed in part, reversed in part, and remanded.