ECUADOR IMPORTADORA-EXPORTADORA CIA. LTDA., Respondent, v ITF (OVERSEAS) CORPORATION et al., Defendants, and AGUSTIN F. CORDERO (RIVADENEIRA), Appellant.

First Department, June 7, 1983

APPEARANCES OF COUNSEL

*Harold R. Tyler, Jr.,* of counsel (*Theodore B. Van Itallie, Jr.,* and *Aaron R. Marcu* with him on the brief; *Patterson, Belknap, Webb & Tyler,* attorneys), for appellant.

*Harry H. Wise, III,* of counsel (*Mario Diaz-Cruz, III,* with him on the brief; *Gadsby & Hannah,* attorneys), for respondent.

**OPINION OF THE COURT**

MILONAS, J.

Following a trial in connection with the instant matter, the court found defendants Agustin Febres Cordero, ITF (Overseas) Corporation, Intrafina N. V., and William H.

Lewis liable to plaintiff in the amount of $650,000, plus interest and costs, for the conversion of the proceeds of the sale of certain promissory notes. The individual defendants Lewis and Cordero were engaged in the business of brokering promissory notes. ITF was incorporated in the State of Georgia and had its office in New York City. Cordero was not an officer, director or stockholder of ITF. Intrafina was a Netherlands Antilles corporation, whose principal shareholder was Lewis. Cordero was a director and one of two minority stockholders of Intrafina. Plaintiff Ecuador Importadora-Exportadora Cia. (Ecimex), an Ecuadorian corporation, entrusted six promissory notes to La Previsora Banco of Guayaquil, Ecuador, to be sold in New York. The notes were guaranteed by La Previsora, which then entered into an agreement with Lewis to discount the notes through ITF's New York office and deposit the proceeds in La Previsora's account at Chase Manhattan Bank in New York. Although Lewis did indeed sell the notes, he directed that the proceeds be placed in Intrafina's account with Marine Midland Bank instead of La Previsora's account with Chase Manhattan.

The trial court determined that Intrafina, with Cordero's knowledge and approval, transferred the funds to another corporation, Intraland, in which both Cordero and Lewis had major interests. At the time of this transfer, Intraland's financial condition was extremely precarious. According to the court, while a director of a corporation is not ordinarily liable for the tortious acts of a codirector, Intrafina was a closely held corporation with only three shareholders and accordingly Cordero "must have known the financial status of Intrafina and that if for any reason he did not, he had a duty to inquire into the sudden largess that befell Intrafina before agreeing to the transfer of funds to Intraland." The court expressly stated that it was not basing its decision on a finding of negligence on the part of Cordero. However, since Cordero knew or ought to have known Intrafina's financial situation, Cordero's involvement in the matter amounted to a participation with Lewis in the conversion of plaintiff's funds. The court also referred to the fact that at the time of the transfer of the proceeds to Intraland, that company was entangled in a

Colorado land transaction and desperately in need of capital to protect the investment by Lewis and Cordero.

While there appears to be little dispute concerning Lewis' wrongful conduct, the question here surrounds the culpability of Cordero. Defendant-appellant Cordero contends that the evidence at trial clearly demonstrated that he neither had knowledge of, nor participated in, Lewis' acts of conversion. He further alleges that he did not learn that Lewis might have diverted the proceeds of the Ecimex notes until after the Ecuadoran Government intervened in the operation of La Previsora, which occurred many months after the actual theft. Prior to that, Cordero asserts, he was not even aware that Lewis had received notes from plaintiff. It is Cordero's position that in the absence of proof that he knew about, or took part in, Lewis' diversion of the proceeds from the Ecimex notes, the judgment against him cannot be sustained. In addition, he claims that he cannot be held liable for failing to inquire into the financial condition of Intrafina or the source of the funds it loaned to Intraland since he had no reason and no legal duty to do so, but assuming, *arguendo,* that he did have a responsibility to investigate, that duty was owed exclusively to Intrafina, and his duty to perform cannot make him personally liable to plaintiff.

In *Santa Barbara v Avallone & Miele* (270 NY 1) a case bearing great similarity to the present situation, plaintiff delivered three bonds and a savings bank book to defendant Avallone corporation, which was engaged in the business of transmitting moneys to and from the United States, Italy and other European countries. The president of Avallone was instructed to collect the proceeds represented by these securities and credit them as lire in plaintiffs' account at the Postal Savings Bank at Rome, Italy. However, of the total proceeds of 44,266 lire, only 400 lire were deposited in the Postal Savings Bank. The remainder was remitted to the United States and credited by the Italian Discount and Trust Company of New York in a "Special Lire Account" to Avallone. Shortly thereafter, the funds were transferred to the "Dollar Account" maintained by the corporation at the same bank. Subsequently, the money was withdrawn by checks signed by both the corpo-

ration's president and its treasurer, Stefano Miele. Special Term granted judgment against the president of Avallone (now deceased) and the corporation on the ground that they "had diverted, converted and misappropriated the proceeds of the securities and that the concealment of such fact from the plaintiffs constituted a fraud on them." (270 NY, at p 5.) The complaint was dismissed as to the others, including Miele. The Appellate Division (243 App Div 357) reversed on the law as to Miele, who then appealed.

At issue before the Court of Appeals was whether the treasurer, Miele, who was an officer of the corporate defendant but had no actual knowledge of the transaction in question, could be held personally liable for conversion of plaintiff's funds. The court ruled (at p 6) that Miele could only be deemed an active participant in the wrongdoing by the corporation "if he participated as agent in the withdrawal of the money of the plaintiffs from the lire account, or had knowledge that the moneys of the plaintiffs in that account had been placed in the 'Dollar Account.' The findings do not show that Miele had knowledge that these moneys had gone into the 'Dollar Account,' nor is there any finding that Miele participated in the directions which transferred these moneys from the lire account to the 'Dollar Account.'" According to the court, the facts did not demonstrate that Miele had any dealings with the plaintiffs prior to the death of Avallone's president or that he was in any way connected with the transaction. The court noted (at p 7) that: "It is true that Miele was one of the signers of the checks withdrawing the credit arising from the deposit of the moneys belonging to the plaintiffs in the dollar account but he had no knowledge that the moneys were other than assets of the Avallone corporation, and, therefore, available for the purposes of its business. There is no finding that he received and retained any of these moneys for which he can be called upon to account. Nor is there any finding that he appropriated any property to himself."

Thus, as the Court of Appeals declared in *Marine Midland Bank v Russo Produce Co.* (50 NY2d 31, 44): "As a general proposition, corporate officers and directors are not liable for fraud unless they personally participate in the

misrepresentation or have actual knowledge of it * * * Mere negligent failure to acquire knowledge of the falsehood is insufficient" (see, also, *Stell Mfg. Corp. v Century Inds.*, 15 AD2d 87). In the instant matter, Cordero testified without contradiction that he had no knowledge whatever that proceeds belonging to Ecimex had been deposited into Intrafina's bank account. Cordero's lack of knowledge is also supported by the circumstantial evidence introduced at trial. La Previsora Bank, which arranged for the sale of plaintiff's notes, dealt exclusively with Lewis and ITF. Antonio Calderon, the bank's foreign department manager, approached Lewis in the first place because Lewis had previously undertaken promissory note transactions for La Previsora Bank. Calderon asserted that he was unaware of Intrafina and had dealings only with Lewis. F. M. Mayer & Company, the broker which sold the notes, also dealt only with Lewis. Moreover, when La Previsora Bank attempted to recover the proceeds of the Ecimex notes, it communicated entirely with Lewis, and only Lewis replied. There was, therefore, no proof, documentary or testimonial, linking Cordero to the receipt or disposition of plaintiff's notes.

The record further reveals that at a meeting in Ecuador in September of 1976 between Cordero and Lewis, Cordero agreed to a loan from Intrafina to Intraland so that Intraland could meet the balance of its outstanding obligation. On that occasion, Lewis presented Cordero with Intrafina's financial statement through May of 1976, which reflected a net worth in excess of $2,000,000 and cash on hand of more than $750,000, sufficient for the loan to Intraland. Cordero stated Lewis advised him at that time that Intrafina was in even better condition in September than it had been in May. At no point did Cordero obtain or review the bank statements of Intrafina. Consequently, when Cordero approved the loan to Intraland, he was under the impression that Intrafina had more than enough cash to meet it. Even if Cordero could be considered culpable of nonfeasance in regard to his corporate duties, his liability does not extend to a third party. (*Michaels v Lispenard Holding Corp.*, 11 AD2d 12.) A corporate officer acting as agent can be held liable to a third party only where it appears that "the acts

were other than the ordinary . acts of corporate agents acting for their principal or that they were in exclusive and complete control of the management and operation" of the business. *(Michaels v Lispenard Holding Corp., supra,* at p 14.)

Accordingly, order of the Supreme Court, New York County (SEYMOUR SCHWARTZ, J.), entered on or about August 16, 1982, denying the motion by defendant Agustin Cordero to set aside the court's original decision and enter judgment in his favor against plaintiff, should be reversed on the law and the facts, with costs and disbursements, the motion granted and the complaint dismissed.

Judgment of the Supreme Court, New York County (SEYMOUR SCHWARTZ, J.), entered on June 7, 1982, which awarded judgment to plaintiff against defendants ITF (Overseas) Corporation, Intrafina N. V., William Lewis, and Agustin Febres Cordero in the amount of $650,000, plus interest and costs, should be modified, on the law and the facts, with costs and disbursements, to the extent of awarding judgment in the favor of defendant Agustin Febres Cordero against plaintiff, and otherwise affirmed.

SULLIVAN, J. P., SILVERMAN, LYNCH and ALEXANDER, JJ., concur.

Judgment, Supreme Court, New York County, entered on June 7, 1982, unanimously modified, on the law and the facts, to the extent of awarding judgment in favor of defendant Agustin Febres Cordero against plaintiff, and otherwise affirmed, and an order of said court, entered on or about August 16, 1982, unanimously reversed, on the law and the facts, the motion granted and the complaint dismissed. Appellant shall recover of respondent one bill of $75 costs and disbursements of these appeals.