AIR TRAFFIC CONFERENCE OF AMERICA, A DIVISION OF AIR TRANSPORT ASSOCIATION OF AMERICA v. MARINA TRAVEL, INC., AND PENELOPE CHAMIS

No. 8321SC1037

(Filed 19 June 1984)

1. Corporations § 13— misapplication of funds by manager of the corporation— owner not liable on basis of agreement

In an action in which plaintiff sought to hold the individual defendant personally liable for $95,810.59 received from the sale of airline tickets but not paid to the applicable airlines, the trial court properly directed verdict for the defendant on the basis that the individual defendant signed a sales agency agreement with plaintiff "on behalf of the agency" as president-secretary and treasurer of defendant corporation. Plaintiff offered no evidence that the defendant signed the agreement accepting personal liability for the financial obligations of the agency to plaintiff, and plaintiff offered no evidence to justify piercing the corporate veil under the usual exceptions to hold the defendant personally liable.

2. Corporations § 13— defendant not liable for improper supervision of employees

In an action in which plaintiff sought to hold the individual defendant personally liable for money received from the sale of airline tickets but not paid to the applicable airlines, plaintiff failed to show that defendant failed to act with due diligence in her supervision of agents employed by defendant corporation where (1) plaintiff failed to offer evidence as to when and how and by whom the alleged misappropriation of funds occurred, and (2) plaintiff failed to show that defendant neglected to exercise the required standard of due care or that she even had a fair opportunity to discover the diversion of the proceeds. G.S. 55-35.

APPEAL by plaintiff from *Mills, Judge.* Judgment entered 25 February 1983 in Superior Court, FORSYTH County. Heard in the Court of Appeals on 8 June 1984.

*White and Crumpler by Randolph M. James and William E. West, Jr., for plaintiff appellant.*

*Cofer and Mitchell by William L. Cofer and Dean B. Rutledge for defendant appellee.*

BRASWELL, Judge.

The plaintiff seeks to hold Penelope Chamis personally liable for $95,810.59 received from the sale of airline tickets but not paid to the applicable airlines. The complaint alleges that the

defendant Chamis (hereinafter referred to as the defendant) is liable on the basis of: (1) an agreement she signed on behalf of the corporation promising to hold all receipts in trust for the carrier; (2) her participation in the misapplication and diversion of the ticket sale proceeds; (3) her breach of duty of due care and diligence by recklessly placing her confidence in untrustworthy employees; and (4) her unfair and deceptive trade practices in violation of Chapter 75 of the North Carolina General Statutes. At the close of the plaintiff's evidence, the defendant made a motion for directed verdict pursuant to G.S. 1A-1, Rule 50(a) which was granted. From this ruling the plaintiff appeals.

In January of 1980, the defendant acquired 100% of the stock of an existing travel agency incorporated under the laws of the State of New York. The corporation, Marina Travel, Inc., which was located in Commack, New York, had been operating under the control and sole ownership of Marina Armato. The travel agency was purchased by the defendant's estranged husband who worked there as a sales agent. He asked the defendant if she would act as president of the corporation "in name only."

The plaintiff Air Traffic Conference of America (ATC), is an unincorporated non-profit trade association composed of virtually all the airlines in the United States. The sole purpose of the ATC is to administer the sales agency agreements between travel agencies and the airlines. The ATC enables an airline to sell tickets through travel agencies throughout the United States rather than establishing their own office in each city. The money collected from airline ticket sales less the agency's commission is held in trust by the agency until satisfactorily accounted for to the airline carrier.

The defendant was required by the plaintiff to appoint a manager with at least two years' experience in the sales and promotion of air travel. Since the defendant had no prior experience in the travel agency business, Marina Armato was approved by the plaintiff to continue as manager of the corporation.

After the purchase of the agency had been completed, the defendant returned to Winston-Salem, North Carolina to run her newly opened restaurant, leaving the agency's operation to Armato and a staff of experienced employees. During 1980, the defendant traveled to New York only two or three times to check

on the business because, as she testified, she was never a part of the decision making on a day-to-day basis or otherwise. She was advised by the staff on these visits and in a number of long distance telephone calls that business was slow.

In October of 1980, the plaintiff conducted a routine audit which revealed a $5,000 deficit owed to the airlines by the agency. This amount was promptly paid. However, in January of 1981, when two drafts from the agency were dishonored for lack of sufficient funds, the plaintiff quickly took steps to close the agency. Subsequent audits disclosed unreported sales of airline tickets in excess of $106,000.00. A bond recovery by ATC reduced the indebtedness claimed to $95,810.59.

At trial, the defendant, who was called as an adverse witness, testified that only her estranged husband's money was invested into the travel agency, not her own, and that even though she was shareholder of 100% of the corporation she never received any money from the business. Although she was named president of the corporation, the defendant also stated that, because she was running her restaurant in Winston-Salem she left the operation of the agency to Armato who was the agency's previous owner and who had been approved by the plaintiff as its manager because of her travel business experience. Furthermore, she testified that she was not told when the agency was closed or about the second audit and that she had no knowledge of the diversion of funds until she was served with the complaint.

The only other witness called at trial was Richard Susmeier, a financial assistant employed by the plaintiff. He testified as to the exact amount diverted by the travel agency from the airline ticket sales, but had no knowledge as to the defendant's liability in the diversion or what she did or did not do in this particular corporation.

The only issue on appeal is whether the trial court properly granted the defendant's motion for a directed verdict. The scope of our review is whether the evidence, when considered in the light most favorable to the plaintiff, is sufficient for submission to the jury. *Kelly v. Harvester Co.*, 278 N.C. 153, 179 S.E. 2d 396 (1971). If the plaintiff fails to make a prima facie showing for relief, it is not entitled to have its case sent to the jury and the

judge may rule on the issue as a matter of law. *Hong v. George Goodyear Co.*, 63 N.C. App. 741, 306 S.E. 2d 157 (1983).

[1]   In the first count of the complaint, the plaintiff alleged that the defendant is liable for the missing funds because she signed a sales agency agreement with the ATC "on behalf of the agency" as President-Secretary and Treasurer of Marina Travel, Inc., accepting "full responsibility for all . . . financial irregularities, and all outstanding financial obligations, which have been or may be charged by ATC or any ATC carrier." However, the plaintiff offered no evidence that the defendant signed the agreement accepting personal liability for the financial obligations of the agency to the ATC. In this agreement, it is clear that the defendant only signed in her capacity and within her authority as a corporate officer. A default judgment against the corporation, which was also sued in this action, was entered on 7 June 1982. Thus, the corporation has been held accountable for its financial obligations to the ATC. The defendant cannot be held personally liable for the corporation's financial obligations merely on the basis that she holds 100% of its stock. A shareholder's limited liability for the obligations of a corporation is a special privilege for operating a business in corporate form. Robinson, N.C. Corporation Law and Practice Sec. 9-7 (3d ed. 1983). The plaintiff has offered no evidence to justify piercing the corporate veil under the usual exceptions and to hold the defendant liable. The plaintiff has also offered no evidence that would indicate that the defendant should be held liable on the basis of her officer status. Under North Carolina law, an officer cannot be held individually liable for the tortious conversion of property by the corporation or other corporate agents in the absence of her participation therein. *Peed v. Burleson's, Inc.*, 244 N.C. 437, 94 S.E. 2d 351 (1956). *See also Robinson, supra,* at Sec. 13-13. In the second count of the complaint, the plaintiff did allege that the defendant participated in the misapplication of the ticket sale proceeds, but failed to present at trial any evidence to substantiate that allegation. On the contrary, the only evidence that was brought forward tended to show that the defendant had no knowledge of the misapplication of the money or any other wrongdoing until after the agency was closed and she was served with the complaint. Thus, on the first two theories of relief against the defendant in the complaint, the plaintiff has failed to make a prima facie showing entitling it to

relief. We hold that a directed verdict for the defendant was proper.

[2]  The third count in the complaint charges that, as an officer of the corporation, the defendant is liable for placing her confidence in employees that she knew or should have known were untrustworthy. G.S. 55-35 imposes the same duty on directors and officers that they must "discharge the duties of their respective positions in good faith, and with that diligence and care which ordinarily prudent men would exercise under similar circumstances in like positions." Thus, an officer may be held liable for the torts committed by agents of the corporation if the officer fails to act with due diligence in their supervision. *Robinson, supra.*

In the first place, the plaintiff has failed to offer evidence as to when and how and by whom the alleged misappropriation of funds occurred. Thus, it is mere speculation that the defendant was an officer at the time the deficiency in proceeds occurred or that she was responsible for the employees who allegedly diverted the funds. As required in *Minnis v. Sharpe*, 203 N.C. 110, 164 S.E. 625 (1932), there has been no showing of a causal connection between the loss of the plaintiff and any alleged negligence on the part of the defendant as chief officer of the corporation.

However, even assuming the alleged misappropriation took place while the defendant was the sole shareholder and president, the plaintiff has failed to make a prima facie showing as to her liability. In *Minnis v. Sharpe*, 198 N.C. 364, 151 S.E. 735 (1930), 202 N.C. 300, 162 S.E. 606, *reversed on other grounds*, 203 N.C. 110, 164 S.E. 625 (1932), the plaintiffs sought to hold the defendant-directors liable for the misappropriation of funds over a period of years by the corporation's general manager, vice-president and director. The complaint alleged that the directors neglected to exercise ordinary care in the performance of their duties and in selecting the general manager and that this neglect was the proximate cause of the plaintiff's injury. In the second *Minnis* case, 202 N.C. at 303, 162 S.E. at 607, the Supreme Court stated that:

> Directors are not . . . insurers of the honesty and integrity of the officers and agents.

*        *        *        *

Ordinarily of course, directors would not be charged with notice by virtue of desultory, occasional or disconnected acts of mismanagement or fraudulent transactions, but in cases where mismanagement and fraud has been persistently and continuously practiced for substantial periods of time a jury must determine whether the directors, in the exercise of that degree of care which the law imposes, should have known of such practices and that persons dealing with the corporation would be injured thereby.

On the particular facts of the present case, the plaintiff has failed to show that the defendant neglected to exercise the required standard of due care or that she even had a fair opportunity to discover the diversion of the proceeds. *See also Cone v. United Fruit Growers' Association*, 171 N.C. 530, 532, 88 S.E. 860, 862 (1916). The plaintiff required that the agency be managed by someone with at least two years' experience in the sale and promotion of air travel. Marina Armato, who was the previous owner of the business, had the necessary experience and was appointed manager. The plaintiff offered no evidence that would indicate that the defendant's selection was imprudent or in bad faith. On the contrary, the plaintiff approved of the defendant's selection. There was also no evidence presented that the agency had failed to meet its financial obligations while under the sole ownership and control of Marina Armato which would have placed the defendant on notice as to Armato's trustworthiness and capabilities. The defendant testified that the ATC was not misled because she was the sole shareholder and named president of the corporation because the ATC "knew I was not experienced in the travel agency, they knew I had nothing to do with it before, they knew I had never worked in the travel agency. They approved Marina Armatto [*sic*], so they knew I knew nothing about it." The plaintiff has also failed to present evidence that even if the defendant did unreasonably misplace her trust in the corporation's employees, that this failing was a proximate cause of the alleged misappropriation, especially in light of the fact that the plaintiff's own routine audits failed to disclose the extent of the misappropriations. *Minnis*, 203 N.C. 110, 164 S.E. 625 (1932). Again, because the plaintiff has failed to establish a prima facie case of the defendant's liability, we hold that the defendant's motion for a directed verdict was properly granted.

Finally, the plaintiff seeks to hold the defendant liable on the basis that her conduct constituted unfair and deceptive trade practices and violated Chapter 75 of the North Carolina General Statutes. There was no evidence offered at trial to substantiate this allegation. For failure of proof with regard to this count, the directed verdict entered in favor of the defendant was proper.

Affirmed.

Judges HILL and BECTON concur.