Alexander HOLZER, Appellant,

v.

**TONKA BAY YACHTS AND MARINE SALES, INC., Defendant, Respondent,**

and

**Edward J. Osfar, Respondent.**

No. CO–85–2155.

Court of Appeals of Minnesota.

April 29, 1986.

Review Denied June 30, 1986.

■■■■■■■■■■■■■

Gregg A. Murray, Long Lake, for appellant.

Eric W. Forsberg, Minneapolis, for Edward J. Osfar.

Considered and decided by PARKER, P.J., and LANSING and CRIPPEN, JJ., with oral argument waived.

## OPINION

LANSING, Judge.

Alexander Holzer brought this action against Tonka Bay Yachts, Inc., and Edward Osfar, an officer of Tonka Bay, asserting claims of fraud and conversion arising out of the consignment sale of Holzer's boat by Tonka Bay. The trial court granted Osfar's motion for summary judgment and awarded him attorney's fees on the grounds that no facts existed to support Holzer's claims against Osfar as an individual. The trial court also awarded Holzer a default judgment against the corporation. We reverse the summary judgment and attorney's fee award and remand for trial.

## FACTS

Very few of the facts are undisputed. It appears that on or about April 12, 1982, Alexander Holzer's wife, Gitta Holzer, asked Tonka Bay Yachts to sell the Holzers' boat on consignment. Employees of Tonka Bay entered into a consignment agreement with her to sell the boat for $4,895 and receive a 10 percent commission. Whether Osfar consented to the consignment is disputed, but he admits that prior to June 1982 he knew the boat was on Tonka Bay's premises.

On June 11, 1982, Dewey White and Tonka Bay agreed that White would purchase the boat and the trailer on which it was displayed for $4,500; White deposited $500 with Tonka Bay. He testified that he dealt entirely with Joseph Russell, one of Tonka Bay's salesmen. Both Russell and White testified that Russell telephoned Gitta Holzer and she accepted White's offer. The $500 was deposited in Tonka Bay's bank account on June 17.

Both Russell and White testified that White tendered the remaining $4,000 when he took possession of the boat, although it is unclear when this occurred. Tonka Bay deposited White's $4,000 check in its account on June 21. White apparently had possession of the boat before that date.

Around June 21, a problem arose over the trailer on which the boat was displayed. Russell had mistakenly represented to White that the trailer was the Holzers' and that it was included in the sale. In fact, the Holzers did not own the trailer. Everyone disagrees on when White learned about the ownership of the trailer. Russell testified that he told White before delivery of the boat. Osfar testified that he knew of the error soon after the $500 deposit was made. White testified that he was not told of the problem until after he had taken possession of the boat and was not specifically told that the Holzers didn't own the trailer until at least two weeks after he took possession of the boat. Sometime in July 1982, White and Osfar met in an attempt to solve the problem.

Osfar claimed that he wasn't aware the boat had been delivered to White until late June or early July 1982. He also stated he did not know the $4,000 check had been received until he met with White, even though he was the only person who could sign checks for Tonka Bay. He stated that he knew about the $500 deposit when it was made and "pretty well knew what went into the bank account on a regular basis." Russell testified that he told Osfar on the date he received the $4,000 check that White took delivery.

After the deposit was made, Osfar telephoned Gitta Holzer and told her about the trailer problem. He asked the Holzers to obtain a trailer to go along with the boat. Gitta Holzer refused. Osfar then spoke to the Holzers' attorney, Arlo Vander Vegte, and stated that the buyer had "backed out

of" and "rescinded" the transaction. Osfar testified that he was told by Russell that White had backed out of the deal. Osfar believed he did not tell the Holzers that Tonka Bay had received the $4,500 for the boat.

It also appears that Tonka Bay's bank requested additional security for its loans early in the spring of 1982. On July 22, Osfar executed a second mortgage on his home in response to the bank's request. On July 29, 1982, Tonka Bay's bank asserted a right of set off on the corporation's funds. The corporation ceased doing business in early August, and Osfar declared bankruptcy in September. The Holzers never received the proceeds from the sale of their boat. Alexander Holzer brought this action in September 1982.

On September 4, 1985, the trial court granted summary judgment in favor of Osfar, awarding him $3,140.90 in attorney's fees for a bad-faith action. The trial court also ordered a judgment in favor of Holzer against the corporation.

Holzer initially appealed from the September 4 order for judgment; this appeal was dismissed by this court as being from a nonappealable order. Two judgments were entered, one on September 24, 1985, dismissing Holzer's action against Osfar and awarding Osfar his attorney fees, and another on November 8, 1985, awarding Holzer a judgment against the corporation only. Holzer appeals from the judgment entered on November 8.

### ISSUES

1. Is Holzer's notice of appeal sufficient?

2. Did the trial court err in granting summary judgment on Holzer's claims of fraud and conversion?

### ANALYSIS

#### I

■ Notices of appeal are to be liberally construed in favor of their sufficiency, and a notice will be upheld if it clearly shows an intent to appeal and apprises the parties of the issues to be litigated on appeal. *Kelly v. Kelly,* 371 N.W.2d 193, 195–96 (Minn.1985); *Valley Farmers Elevator v. Lindsay Brothers,* 380 N.W.2d 874, 876 (Minn.Ct.App.1986). We think the notice made clear that Holzer intended to appeal from the September 24 judgment entered in favor of Osfar and that the notice did not mislead. Despite the fact that it mistakenly recited the November 8 judgment, the notice did state that Holzer was appealing from a judgment "awarding * * * Osfar summary judgment and attorneys fees." Also, Osfar's brief addresses the merits of granting summary judgment to him and not the propriety of awarding Holzer a judgment against the corporation. We conclude the notice of appeal, though technically improper, was sufficient.

#### II

■ An officer of a corporation cannot be held liable for the corporation's tortious conversion of a third person's property unless the officer actually participated in the transaction or acquiesced in it. W. Knepper, *Liability of Corporation Officers and Directors,* § 7.09 (3rd ed. 1978); *Ecuador Importadora-Exportadora Cia. Ltda. v. ITF (Overseas) Corp.,* 94 A.D.2d 113, 463 N.Y.S.2d 208 (1983); *Air Traffic Conference v. Marina Travel,* 69 N.C.App. 179, 316 S.E.2d 642 (1984); *see also Ellingson v. World Amusement Service Association, Inc.,* 175 Minn. 563, 222 N.W. 335 (1928) (corporate officer who takes part in tort committed by corporation personally liable). In light of the summary judgment, we direct our analysis to whether an issue of material fact existed on the issue of the corporation's conversion of the proceeds from the sale of Holzers' boat and whether Osfar participated in the conversion.

■ A consignee, also known as a factor, is bound to exercise the utmost good faith and loyalty to his principal, the consignor. A consignee must therefore provide his principal with all necessary and useful information relating to the consignment and has a duty to account to the

consignor within a reasonable time or upon a reasonable demand. *Farmers Co-operative Elevator Co. v. Enge,* 126 Minn. 485, 148 N.W. 465 (1914). An unauthorized exercise of control and dominion by the consignee over the consigned property, which is inconsistent with the consignor's title, renders the factor liable for conversion. *Coleman v. O'Neil,* 26 Minn. 123, 131–32, 1 N.W. 846, 852 (1879). Thus, an unauthorized retention of proceeds by a consignee can constitute conversion.

■ Under these principles, and on the record before us, we conclude that a genuine issue of material fact exists on whether the corporation converted the Holzers' proceeds by retaining them until they were set off by the bank and whether Osfar actually participated or acquiesced in this retention by the corporation. It is disputed whether or not the Holzers were informed by Tonka Bay that White had paid the $4,500 and taken the boat on or about June 17, 1982. If they were told of the sale, it is disputed whether they requested their funds. It is also unclear whether White agreed to accept the boat without the trailer, which could affect the propriety of Tonka Bay's retention of the proceeds.

Exactly when Osfar became aware of the delivery of the boat to White and the receipt of the funds is also in dispute. The record contains evidence from which a jury could conclude either that Osfar was aware of the receipt of the funds as of June 17, or that he was unaware of the funds until he met with White, sometime in July. The time of the meeting is also disputed. Osfar's exclusive responsibility for the management of the corporation's funds could allow the jury to infer knowledge of the funds deposited and retention of the funds by the corporation. *See Boyd v. Wimes,* 664 S.W.2d 596, 598 (Mo.App.1984) (jury could infer that employee with full responsibility for corporate funds had knowledge of converted funds); *Taylor v. Alston,* 79 N.M. 643, 447 P.2d 523 (N.M. App.1968) (same).

■ Similarly, issues of material fact exist on Holzer's fraud claim. Holzer asserts

that Osfar's statement to the Holzers' attorney that White had "backed out" and "rescinded" the transaction was false. A dispute exists over whether the statement was false, since Russell testified that White did threaten to back out, while White maintains he never threatened to back out or rescind. Further, we cannot say the evidence is clear that Osfar did not know or should not have known of the falsity of the statement, since it appears that information Russell gave him on this point was only that White had threatened to back out, not that he had actually backed out.

Our view of the record reveals contradictory testimony on several material issues. Accordingly, we cannot say on the basis of the record that Osfar is entitled to judgment as a matter of law on either the conversion or fraud claims. *See* Minn.R. Civ.P. 56.03. In light of our decision, the trial court's award of attorney's fees under Minn.Stat. § 549.21 (1984) is necessarily reversed.

**DECISION**

Genuine issues of material fact exist on the fraud and conversion claims against Osfar. The trial court therefore erred in granting summary judgment and awarding attorney's fees.

Reversed and remanded.