MARTIN, Chief Judge.
 

 Plaintiff, RSN, Properties, Inc. (RSN), was incorporated in North Carolina with three shareholders: Rickie Day (R. Day), who served as President, Beverly Gurkin (Gurkin), who served as Secretary-Treasurer, and Charlotte Day (C. Day). RSN and N. Earl Jones (Jones) are the only member-managers of River Run Investments, LLC (River Run), a limited liability company organized primarily for the purpose of buying and selling real property.
 

 Jones, an attorney, executed the Articles of Organization and Operating Agreement for River Run; these documents permitted the members to engage in other business activities even if competitive with River Run. From time to time Jones provided additional legal services to River Run, such as drafting covenants on property purchased by River Run, preparing deeds when River Run sold property, and issuing title opinions for River Run.
 

 Jones and his wife, Diane, were owners of another business, Specialty Contract Services, LLC (SCS), also formed primarily for the purchase, sale and rental of real estate to the general public. From the date SCS was formed, R. Day, the president of RSN, had averbal option to purchase a one-half interest in SCS and until May 2001, SCS was operated by Jones and R. Day as if R. Day had exercised his option. On 28 August 2001, R. Day and his wife Judy executed an agreement with Earl and Diane Jones, terminating the option and providing for a division of SCS's assets.
 

 RSN alleges in its complaint against Jones, SCS, and River Run, that through the years these parties had established a course of dealing whereby if any member purchased property or negotiated to purchase property for River Run, the property would be sold to River Run for the price negotiated or incurred by the member. However, in June 2000, Jones and R. Day met with representatives of Homes America, Inc. and negotiated the purchase of two mobile homes by SCS. Although SCS paid $19,836.35 for the mobile home with serial number 1901 and $20,461.38 for the home bearing serial number 8984, the invoice costs for the homes were $34,498.00 and $35,585.00 respectively. According to RSN's complaint, in July 2000, Jones and R. Day sold the two homes to River Run for $66,600.00, providing approximately $26,302.27 in undisclosed profit to SCS.
 

 In August 2000, the two mobile homes were delivered to lots in Coats, North Carolina owned by R. Day, C. Day and Gurkin, individually. However, the certificates of origin were never delivered due to a lawsuit filed against Jones and SCS by Homes America on 19 October 2000.
 

 According to RSN's complaint, River Run issued a check in the amount of $36,600.00 payable to Homes America as partial payment for the mobile homes, but it was never negotiated due to the lawsuit. RSN further alleges that on 7 September 2001, Jones drew a counter check on the River Run account in the amount of $36,600.00 and deposited the money into SCS's account, knowing he would be unable to provide River Run with the certificates of origin on these mobile homes. Without the certificates of origin, the mobile homes now owned by River Run could not be attached and sold as real property.
 

 Jones and River Run answered, denying the material allegations of RSN's complaint. As a third-party plaintiff, Jones alleged that R. Day, Gurkin and C. Day committed three acts of conversion. He also claimed that Gurkin and Ann Gurkin Realty, as real estate agents for River Run, breached their fiduciary duty to River Run and committed constructive fraud when they failed to close the sale on property under contract. Lastly, Jones alleged the acts by defendants R. Day, Gurkin, C. Day and Ann Gurkin Realty were unfair and deceptive trade practices.
 

 In its answer and third party complaint, SCS alleges that R. Day represented to SCS and Jones that he would assist SCS in the defense of the suit by Homes America. In exchange, Jones and his wife, Diane, entered into an agreement with R. Day and his wife Judy,
 
 inter alia,
 
 releasing R. Day from his option to purchase 50% of SCS and conveying to the Days a condominium at North Topsail Beach. Notwithstanding such representation and agreement by R. Day, SCS alleged that he gave testimony in the action which was contrary to the interests of SCS. Because of R. Day's actual and constructive fraud, SCS claims damages in excess of $10,000.
 

 The trial court entered an order dismissing with prejudice RSN's claims for relief against Jones for constructive fraud, breach of fiduciary duty and unfair trade practices; Jones' third-party complaints against C. Day, Gurkin and Ann Gurkin Realty; and the third party claims of SCS against R. Day and J. Day. In granting these motions to dismiss, the trial court recited that it had "considered the affidavits and exhibits offered in support and in opposition to the motions. . . ." Where the trial court considers matters outside the pleadings, a motion to dismiss will be treated as a motion for summary judgment pursuant to N.C. Gen. Stat. § 1A-1, Rule 56.
 
 Ronald G. Hinson Electric, Inc. v. Union County Bd. of Educ.,
 

 125 N.C. App. 373
 
 , 375,
 
 481 S.E.2d 326
 
 , 328 (1997). Therefore, we treat the trial court's order dismissing all of these claims as one granting summary judgment and we apply the applicable standard of review.
 

 I.
 

 Standard of Review
 

 Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2003). The movant must show that no triable issue exists and he may prove this by showing "an essential element of the opposing party's claim is nonexistent, or . . . that the opposing party cannot produce evidence to support an essential element of his claim."
 
 Collingwood v. G.E. Real Estate Equities,
 

 324 N.C. 63
 
 , 66,
 
 376 S.E.2d 425
 
 , 427 (1989). If the moving party meets this burden, the burden shifts to the nonmoving party to "produce a forecast of evidence demonstrating that the [nonmoving party] will be able to make out at least a prima facie case at trial."
 

 Id.
 

 The trial judge must consider the evidence "in a light most favorable to the nonmoving party,"
 
 DeWitt v. Eveready Battery Co.,
 

 355 N.C. 672
 
 , 682,
 
 565 S.E.2d 140
 
 , 146 (2002) (citations omitted), and "[a]ll inferences of fact must be drawn against the movant and in favor of the nonmovant."
 

 Id.
 

 II.
 

 RSN v. Jones
 

 Plaintiff RSN Properties assigns as error the court's granting of Jones' summary judgment motion as to plaintiff's claims for breach of fiduciary duty and unfair and deceptive practices. In addition, it assigns as error the court's granting of Jones' motion to dismiss plaintiff's constructive fraud claim. Pursuant to N.C. Gen. Stat. § 57C-8-01, all of these claims were derivative claims brought on behalf of River Run by RSN, a member-manager of the limited liability company.
 

 Breach of Fiduciary Duty
 

 Plaintiff contends Jones breached his fiduciary duty to RSN as a member manager of River Run in three separate ways: (1) by converting the $26,302.27 profit from the sale of the mobile homes to his own benefit, (2) by taking $36,600.00 from the River Run account and depositing it into SCS's account, and (3) by failing to advise his client, River Run, of his conflict of interest in drafting River Run's operating agreement.
 

 "A claim for breach of fiduciary duty requires the existence of a fiduciary duty."
 
 Governor's Club Inc. v. Governors Club Ltd. P'ship,
 

 152 N.C. App. 240
 
 , 247,
 
 567 S.E.2d 781
 
 , 786 (2002),
 
 aff'd,
 

 357 N.C. 46
 
 ,
 
 577 S.E.2d 620
 
 (2003). "A fiduciary duty `exists in all cases where there has been a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing confidence.'"
 
 Compton v. Kirby,
 

 157 N.C. App. 1
 
 , 15,
 
 577 S.E.2d 905
 
 , 914 (2003) (citations omitted).
 

 Plaintiff claims, and Jones admits, that Jones and RSN, as members and owners of River Run, "each owed fiduciary duties to the other to act with the utmost good faith in all matters and things affecting River Run and its management and operations, which included the duty to disclose all material facts relating to expenditures made by River Run and the assets of River Run." Although N.C. Gen. Stat. § 57C-3-22(b) (2003) requires the duty of good faith in a manager of a limited liability company, N.C. Gen. Stat. § 57C-3-22(e) allows a written operating agreement to alter the manager's duty to account as trustee. The statute provides:
 

 Except as otherwise provided in the articles of organization or a written operating agreement, every manager must account to the limited liability company and hold as trustee for it any profit or benefit derived without the informed consent of the members by the manager from any transaction connected with the formation, conduct, or liquidation of the limited liability company or from any personal use by the manager of its property.
 

 N.C. Gen. Stat. § 57C-3-22(e) (2003).
 

 Jones claims his duty to account to RSN was waived pursuant to Section 1.6 of the River Run operating agreement which provides:
 

 Except as expressly provided otherwise herein and subject to applicable law, unless a Member agrees otherwise with the Company, such Member may engage in any activity in addition to the business of the Company, whether or not competitive with or in conflict with the business of the Company, and shall not be required to disclose such activity to or offer any interest in any such activity to the Company or to any other Member.
 

 Although the statute allows an operating agreement to alter the duty of the trustee to account, a question of material fact exists as to whether the River Run operating agreement altered Jones' duty to account or simply allowed him to participate in competing businesses. By purchasing the mobile homes and selling them to River Run at a profit without disclosing the details of the transactions to RSN, Jones may have avoided his duty to account to the members. Therefore, we hold the grant of summary judgment as to plaintiff's claim for breach of fiduciary duty was error.
 

 Constructive Fraud
 

 Plaintiff next assigns error to the dismissal of its claim against Jones for constructive fraud. Plaintiff asserts that Jones committed constructive fraud by (1) making a profit he did not disclose to River Run on the sale of the mobile homes, (2) taking $36,600 from River Run when he knew the certificates of origin could not be issued in exchange for the payment, and (3) by failing to disclose all material facts as required by a fiduciary. We likewise consider the trial court's order dismissing this claim as one for summary judgment. N.C. Gen. Stat. § 1A-1, Rule 56 (2003).
 

 The elements of a constructive fraud claim are "(1) a relationship of trust and confidence, (2) that the defendant took advantage of that position of trust in order to benefit himself, and (3) that plaintiff was, as a result, injured."
 
 White v. Consol. Planning, Inc.,
 
 ___ N.C. App. ___,
 
 603 S.E.2d 147
 
 , 156 (2004),
 
 disc. review denied,
 
 (Feb. 3, 2005)(No. 579P04). Since we have already determined a genuine issue of material fact exists as to whether Jones' fiduciary duty to account financially was waived by the operating agreement, we also hold it was error to grant summary judgment with respect to RSN's claim of constructive fraud.
 

 Unfair and Deceptive Practices Claim
 

 To prevail on a claim for unfair and deceptive practices, one must show: "(1) an unfair or deceptive act or practice, or an unfair method of competition, (2) in or affecting commerce, (3) which proximately caused actual injury to the plaintiff or to his business."
 
 Spartan Leasing v. Pollard,
 

 101 N.C. App. 450
 
 , 460,
 
 400 S.E.2d 476
 
 , 482 (1991). "A practice is deceptive if it has the capacity or tendency to deceive the average consumer, but proof of actual deception is not required."
 
 Id.
 
 at 461,
 
 400 S.E.2d at 482
 
 .
 

 Plaintiff contends that Jones, as owner of SCS, made an undisclosed profit on the sale of the mobile homes. In its complaint, RSN alleges that the profit was not divulged to River Run and that the transaction was in "contravention of the parties' agreements and course of dealing with one another." It is unclear whether R. Day was acting on behalf of RSN, River Run, or SCS during this purchase and resale and whether the other shareholders of RSN, Gurkin and C. Day, were aware the homes were being sold by SCS. RSN further alleges that at the time Jones issued the River Run check to SCS, "he knew or should have reasonably known that he could not produce Certificates of Origin" for the mobile homes.
 

 Jones, in his answer, denies each of these allegations. In an affidavit filed in support of his motion, Jones stated that "[o]n 7 July 2000, Jones and Rickie Day met with Beverly Gurkin and Charlotte Day in RSN's office and all parties discussed and agreed that River Run would purchase the two mobile homes that are the subject of plaintiff's complaint for approximately $2,000.00 below each invoice price." Jones further asserted that it was Rickie Day who obtained $30,000.00 from River Run's account and deposited it into SCS's checking account.
 

 However, Beverly Gurkin, in her affidavit, stated, "[i]t was never disclosed that Earl Jones' company, Specialty Contract Services, LLC would be making a profit of more than $20,000 on River Run Investments, LLC." She also said that Jones wrote a counter check to SCS drawn on River Run's account "nearly one year after he knew he could not provide certificates of origin. . . ." Additionally, Charlotte Day provided a statement in her affidavit saying, "[n]ot only was Specialty Contract Services involvement not disclosed, Earl took $36,600 from River Run knowing he could not deliver, and has not delivered three years later, the certificates of origin." Clearly, when viewing the evidence in the light most favorable to the nonmoving party, a question of material fact exists as to whether Jones committed a deceptive act by taking a "secret profit" and allegedly writing the checks from the River Run account to SCS. The trial court erred in granting summary judgment for RSN's claim for unfair and deceptive practices.
 

 III.
 

 Jones' Third-party Claims against Gurkin, C. Day and Ann Gurkin Realty Conversion
 

 Jones and River Run argue the trial court erred in granting Gurkin and C. Day's motions to dismiss Jones' derivative third-party complaint for conversion. Since the trial court reviewed affidavits and exhibits, the motion to dismiss ordinarily would be reviewed as a motion for summary judgment. However, because the affidavits and exhibits did not speak to Jones' claim for conversion, it is apparent the trial court only considered the pleadings in regards to this claim. Therefore, we review Jones' claim for conversion as a motion to dismiss.
 

 "A motion to dismiss made pursuant to G.S. 1A-1, Rule 12(b)(6) tests the legal sufficiency of the complaint."
 
 Harris v. NCNB,
 

 85 N.C. App. 669
 
 , 670,
 
 355 S.E.2d 838
 
 , 840 (1987). In order to withstand a motion to dismiss, the allegations of the complaint, treated as true, must be "sufficient to state a claim upon which relief may be granted under some legal theory, whether properly labeled or not."
 

 Id.
 

 "[A] complaint should not be dismissed for insufficiency
 
 unless it appears to a certainty that plaintiff is entitled to no relief under any state of facts which could be proved in support of the claim.
 
 "
 
 Stanback v. Stanback,
 

 297 N.C. 181
 
 , 185,
 
 254 S.E.2d 611
 
 , 615 (1979) (quoting 2A Moore's Federal Practice, § 12.08, pp. 2271-74 (2d ed. 1975)) (emphasis original).
 

 In his complaint, Jones alleges three acts of conversions by Gurkin and C. Day:
 

 92. On or about 1 February 2000, third-party defendant Rickie Day unilaterally obtained from RBC Centura Bank of Dunn the sum of $20,000.00 from a line of credit set up exclusively for River Run Investments and, without the knowledge, consent or approval of N. Earl Jones, Jr., did unlawfully and willfully convert the same to his own use and benefit and to the use and benefit of third-party defendants Beverly Gurkin and Charlotte Day.
 

 93. In addition to the sum of $20,000.00 alleged above to have been converted by third-party defendant Rickie Day, N. Earl Jones, Jr., alleges, on information and belief, that third-party defendants, Rickie Day, Beverly Gurkin and Charlotte Day converted other funds of River Run Investments to their own use and benefit in amounts to be proven at trial, including the proceeds resulting from the sales of crops grown on lands owned by River Run Investments.
 

 94. On or about 8 July 2002 third-party defendant Rickie Day unlawfully obtained from the office of Dale Harris, CPA two checks drawn on Dale Harris's River Run Investments' Trust Account established by an order of this Court, said checks being check number 1012 in the amount of $7850.00 payable to RSN Properties, the plaintiff, and check number 1013 in the amount of $3726.65 payable to Unti and Lumstead, Attorneys for the third-parties defendants and RSN Properties, plaintiff and thereby converted said funds to his and their own use and benefit, and to the use and benefit of third-party defendants Beverly Gurkin and Charlotte Day.
 

 In their answers, each defendant denied the allegations.
 

 "Conversion is defined as `an unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of their condition or the exclusion of an owner's rights.'"
 
 Gallimore v. Sink,
 

 27 N.C. App. 65
 
 , 67,
 
 218 S.E.2d 181
 
 , 183 (1975) (citations omitted). "Under North Carolina law, an officer cannot be held individually liable for the tortious conversion of property by the corporation or other corporate agents in the absence of her participation therein."
 
 Air Traffic Conf. of America v. Marina Travel,
 
 Inc.,
 
 69 N.C. App. 179
 
 , 182,
 
 316 S.E.2d 642
 
 , 644 (1984). Our legislature limits the personal liability of a shareholder unless he is "personally liable by reason of his own acts or conduct."
 
 N.C. Gen. Stat. § 55-6-22
 
 (b) (2003).
 

 The pleadings fail to demonstrate Gurkin's and C. Day's participation in the conversion. Thus, these defendants are entitled, as a matter of law, to dismissal as Jones and River Run failed to state a claim upon which relief could be granted.
 

 Breach of Fiduciary Duty
 

 Next, Jones asserts the trial court erred in dismissing his complaint against Gurkin for breach of fiduciary duty. Because both Jones and Gurkin submitted affidavits to the trial court, we treat Jones' motion to dismiss as a motion for summary judgment.
 

 Jones argues that Gurkin breached her fiduciary duty to River Run when she participated in the conversions of River Run's funds. Gurkin admits that "a confidential relationship existed with fiduciary duties owed to one another." However, since we have already held that Jones failed to show that Gurkin participated in the alleged conversions, likewise we find that he is unable to show she breached her duty by participating in the alleged conversions. Summary judgment of Jones' third-party complaint for breach of fiduciary duty is affirmed.
 

 Constructive Fraud
 

 In his fourth assignment of error, Jones argues the trial court erred in dismissing his claim for constructive fraud against Gurkin and Ann Gurkin Realty. He claims that as real estate agents for River Run, Gurkin and Ann Gurkin Realty owed a fiduciary duty to River Run which was breached when they failed to close the sale of River Run's Red Robin property. A claim for constructive fraud must show that plaintiff and "defendants were in a `relation of trust and confidence . . . [which] led up to and surrounded the consummation of the transaction in which defendant is alleged to have taken advantage of his position of trust to the hurt of plaintiff.'"
 
 Barger v. McCoy Hillard & Parks,
 

 346 N.C. 650
 
 , 666,
 
 488 S.E.2d 215
 
 , 224 (1997) (citations omitted). "Implicit in the requirement that a defendant `[take] advantage of his position of trust to the hurt of plaintiff' is the notion that the defendant must seek his own advantage in the transaction; that is, the defendant must seek to benefit himself."
 

 Id.
 

 Jones failed to allege how Gurkin and Ann Gurkin Realty sought to benefit themselves, an essential element of the claim. We affirm the order dismissing Jones' constructive fraud claim.
 

 Unfair and Deceptive Practices
 

 In Jones' final claim, he contends that the trial court erred in dismissing his claim against Gurkin, C. Day and Ann Gurkin Realty for unfair and deceptive practices. It is clear that although the trial court considered affidavits and exhibits, only the pleadings addressed this claim. Therefore, we review the claim as a motion to dismiss.
 

 Jones alleges that Gurkin's and C. Day's participation in a conversion of River Run's funds, and Gurkin's and Ann Gurkin Realty's breach of fiduciary duty by failing to close the sale of the River Run Property are unfair and deceptive trade practices. A claim for unfair and deceptive practices requires that plaintiff show that the defendant committed an unfair or deceptive act or practice in or affecting commerce that proximately caused injury to the plaintiff.
 
 Prince v. Wright,
 

 141 N.C. App. 262
 
 , 268,
 
 541 S.E.2d 191
 
 , 196 (2000). "A trade practice is unfair if it is `immoral, unethical, oppressive, unscruplous, [sic] or substantially injurious'" and it is "deceptive if it `possesse[s] the tendency or capacity to mislead, or create[s] the likelihood of deception.'"
 
 Compton,
 

 157 N.C. App. at 20
 
 , 577 S.E.2d at 917 (citations omitted).
 

 Because we have already held that Jones failed to allege all the elements of a claim for conversion and a claim for breach of fiduciary duty, necessarily the elements for unfair and deceptive practice have not been alleged. Therefore, Jones' argument that the unfair and deceptive practice claim was improperly dismissed must also fail.
 

 IV.
 

 SCS v. R. Day and J. Day
 

 SCS argues the trial court erred in granting R. Day's and J. Day's motion to dismiss SCS's constructive fraud claim. We first address third-party defendants R. Day's and J. Day's motion to dismiss the appeal as being interlocutory.
 

 Where an order "disposes of fewer than all claims between all parties the order is interlocutory and, ordinarily, is not immediately appealable."
 
 Dalton Moran Shook Inc. v. Pitt Development Co.,
 

 113 N.C. App. 707
 
 , 710,
 
 440 S.E.2d 585
 
 , 588 (1994). Here, the trial court's order is interlocutory because it did not dispose of plaintiff's claims for rescission, conversion, indemnification and dissolution of River Run.
 

 There are, however, two ways an interlocutory order can be appealed.
 

 First, a trial judge may enter a final judgment as to one or more but fewer than all of the claims or parties in a case, which is immediately appealable even though the litigation is not complete as to all claims or all parties, if the trial judge makes an express finding that there is no just reason for delay.
 

 Id.,
 

 N.C. Gen. Stat. § 1A-1, Rule 54(b) (2003). In the present case, the trial judge expressly denied the motion for a Rule 54(b) finding.
 

 Nevertheless, an interlocutory order may be appealed pursuant to
 
 N.C. Gen. Stat. §§ 1-277
 
 and 7A-27(d) which "permit an appeal of an interlocutory order which (1) affects a substantial right, or (2) in effect determines the action and prevents a judgment from which appeal might be taken, or (3) discontinues the action, or (4) grants or refuses a new trial."
 

 Id.
 

 The purpose of these statutes is to allow an appeal of an interlocutory order when the ruling "deprives the appellant of a substantial right which may be lost or prejudiced if not reviewed prior to final judgment."
 

 Id.
 

 It is, however, "the appellant's burden to present appropriate grounds for this Court's acceptance of an interlocutory appeal,"
 
 Jeffreys v. Raleigh Oaks Joint Venture,
 

 115 N.C. App. 377
 
 , 379,
 
 444 S.E.2d 252
 
 , 253 (1994), and not the responsibility of "this Court to construct arguments for or find support for appellant's right to appeal from an interlocutory order."
 

 Id.
 

 at 380
 
 ,
 
 444 S.E.2d at 254
 
 .
 

 Although the Days have made no argument as to why they have a right to appeal this interlocutory order, we elect, pursuant to Rule 2 of the Rules of Appellant Procedure, to review the assignment of error.
 

 The complaint alleges that R. Day and J. Day committed constructive fraud by failing to honor their agreement to assist in defending SCS against the claims of Homes America in exchange for a condominium at Topsail Beach, an agreement releasing them from all financial obligations of SCS, and $5,000.00 cash. R. Day, as a
 
 de facto
 
 partner in SCS, had a fiduciary relationship with Jones. By entering into an agreement with the Jones that provided him with cash, the condominium and the release of further financial obligations for SCS, he took advantage of the relationship to benefit himself. However, the written agreement, which was between Earl and Diane Jones and R. Day and J. Day in their individual capacities, fails to demonstrate that SCS was damaged by this action.
 

 SCS alleges that contrary to their verbal agreement, R. Day "testified by affidavit and at deposition against the interest of Specialty Contract Services, LLC." However, procuring a person to untruthfully testify under oath in favor of a party is illegal.
 
 N.C. Gen. Stat. § 14-210
 
 (2003),
 
 see State v. Huff,
 

 56 N.C. App. 721
 
 , 725,
 
 289 S.E.2d 604
 
 , 606,
 
 disc. review denied,
 

 306 N.C. 389
 
 ,
 
 294 S.E.2d 215
 
 (1982). Therefore, Jones could not contract with R. Day to testify in favor of SCS if the testimony was untruthful and necessarily SCS could not have been injured as a result of an illegal agreement. SCS did not allege all the elements of the claim and the trial court properly dismissed SCS's claim of constructive fraud.
 

 Affirmed in part, reversed in part, and remanded.
 

 Judges McCULLOUGH and ELMORE concur.
 

 Report per Rule 30(e).