■ AMERICAN FEEDS AND LIVESTOCK COMPANY, INC., Respondent, v KALFCO, INC., Appellant. (Action No. 1.) AMERICAN FEEDS AND LIVESTOCK COMPANY, INC., Respondent, v JAMES W. HOLMAN et al., Appellants. (Action No. 2.)—Yesawich, Jr., J. Appeal from a judgment of the Supreme Court (Bryant, J.), entered November 30, 1987 in Tompkins County, upon a decision of the court, without a jury, in favor of plaintiff.

Defendant Kalfco, Inc. was a purchaser of veal calf feed from plaintiff prior to 1980 and a warehouser and regional distributer of such feed for plaintiff from 1981 to 1983. In 1983, the parties agreed to terminate their business relationship when plaintiff refused Kalfco's demand for a higher compensation rate. Upon plaintiff's retention of a new warehouser, Kalfco failed to return $161,792 worth of feed, instead transferring the inventory due to itself on credit; Kalfco was not authorized to buy feed on credit since it had a delinquency of over $41,000 for feed purchased prior to 1981. After plaintiff commenced suit based on the conversion, Kalfco, in response to a seizure order issued pursuant to CPLR 7102 and entered on consent, turned over $96,146.25 worth of feed which it had on hand, leaving $65,645.75 worth of feed (over 70 tons) unaccounted for.

Following a bench trial, Kalfco was found liable for conversion of the missing feed plus interest, totaling $84,280.19. In a

separate action for the subject conversion brought against defendant James W. Holman, manager of Kalfco, and his wife, defendant Caroline B. Holman, president, sole director and sole shareholder of Kalfco, and tried jointly with the suit against Kalfco, Supreme Court found the individuals equally liable with Kalfco. During that joint trial, defendants offered no evidence except the parties' affidavits and supporting documents underlying the order to show cause brought on by plaintiff earlier to seize plaintiff's feed in Kalfco's possession. As limited by their brief, defendants appeal only from that part of the judgment holding Caroline Holman liable for the conversion of plaintiff's feed.

The record makes clear that James Holman was in charge of the day-to-day operation of Kalfco and was the individual primarily responsible for the conversion of plaintiff's property. At issue is whether Caroline Holman colluded with her husband on behalf of Kalfco, for there is little evidence in the record pertinent to piercing the corporate veil. In general, a corporate officer or director is liable for the torts of the corporation only when he or she knowingly participated in the wrong or, in the case of fraud, had knowledge of the misrepresentation (see, *Marine Midland Bank v Russo Produce Co.,* 50 NY2d 31, 44; 15 NY Jur 2d, Business Relationships, § 1076, at 349-350; *Santa Barbara v Avallone & Miele,* 270 NY 1, 7). Specific to this case, failure to surrender the wrongfully retained chattel either with knowledge of the conversion or upon demand from the rightful owner will give rise to liability (see, *Lindner v Sahler,* 51 Barb 322, 324-325; 23 NY Jur 2d, Conversion, § 30, at 241-242).

Although knowledge of James Holman's wrongful conduct may not be imputed to Caroline Holman merely because of the marital relationship, we may infer from her role as chief executive officer and sole policy maker for Kalfco that she had the power to allow plaintiff to repossess its feed (see generally, 15 NY Jur 2d, Business Relationships, §§ 865, 908). Indeed, for Caroline Holman to invoke the corporate shield to avoid liability she may not simultaneously deny the powers and responsibilities of her position in the corporate form (see, *We're-Assocs. Co. v Cohen, Stracher & Bloom,* 65 NY2d 148, 152). Be that as it may, officers or directors may not be held liable simply on the basis of their authority (see, e.g., *Santa Barbara v Avallone & Miele, supra);* there must be evidence that Caroline Holman knowingly fostered the conversion or was aware of the conversion and declined to exercise her ability to set it right.

The record contains affidavits from plaintiff's east coast credit manager and its east coast distributing agent indicating that Caroline Holman was informed of plaintiff's demand for the withheld feed, as well as a telegram addressed to "MS JAMES HOLMAN", albeit directed to the attention of James Holman, demanding that the feed be returned immediately. Furthermore, one of Caroline Holman's duties was to enter inventory into a ledger which she did based on invoices filled out by her husband. Those invoices included one transferring, without consideration, over 170 tons of feed to Kalfco, the transfer that precipitated this litigation. Finally, it is not without significance that as the sole shareholder of Kalfco, she was the direct beneficiary of the conversion (cf., Ackerman v Verticle Club Corp., 94 AD2d 665, 666, appeal dismissed 60 NY2d 644).

Admittedly this is all circumstantial evidence, but in the absence of any controverting evidence, including the testimony of Caroline Holman herself, the trier of fact is entitled to draw every favorable inference the evidence reasonably allows (see, Commissioner of Social Servs. v Philip De G., 59 NY2d 137, 141). We find the evidence sufficient to conclude that it is more likely than not that Caroline Holman was on notice that Kalfco was in possession of plaintiff's property without authority to do so and that she failed, without excuse, to relinquish that wrongful possession.

Judgment affirmed, with costs. Mahoney, P. J., Kane, Mikoll, Yesawich, Jr., and Mercure, JJ., concur.