·Michael SIMON and George
Terry, Plaintiffs,

v.

Robert M. CASTELLO, Sal Cannavo
and Ron Lacey, Defendants.

No. 95 Civ. 1959 (DAB).

United States District Court,
S.D. New York.

March 27, 1997.

Davidoff & Malito L.L.P., New York City (Stuart Perlmutter, of counsel), for Plaintiffs.

Middlebrooks & Shapiro, P.C., Parsippany, NJ (Richard P. Shapiro, of counsel), for Ron Lacey.

Bressler, Amery & Ross, Morristown, NJ, for Sal Cannavo.

## MEMORANDUM AND ORDER

BATTS, District Judge.

Plaintiffs Michael Simon ("Simon") and George Terry ("Terry") filed an Amended Complaint alleging that Defendants Sal Cannavo ("Cannavo"), Ron Lacey ("Lacey"), and Robert Castello ("Castello") defrauded Plaintiffs and made negligent misrepresentations in connection with a 1993 Asset Purchase and Consulting and Non–Competition Agreements. Defendants Cannavo and Lacey[1] now move to dismiss the Amended Complaint on the ground that, *inter alia,* the Amended Complaint fails to plead fraud with particularity as required by Rule 9(b) of the Federal Rules of Civil Procedure. For the reasons stated below, Defendants' motion is granted.

## I. BACKGROUND

Plaintiffs were the officers, directors and sole shareholders of Holsin Drug Company ("HDC"), a distributor of pharmaceutical, health and beauty aid products. (Am. Compl.¶¶ 1–3.) Defendant Castello is the majority stockholder, president, chief executive officer and a director of Common Brothers Inc. ("CBI") and Common Brothers Holding, Inc. ("CBI Holding"). (Am. Compl.¶ 4.) Defendant Cannavo is an executive vice-president of CBI Holding, an officer of CBI, and a director of both CBI and CBI Holding. (Am.Compl.¶ 5.) Defendant Lacy is a director, but not an officer, of CBI and CBI Holding. (Am.Compl.¶ 6.)

In or about December 1992, Plaintiffs entered into negotiations with CBI for the sale of HDC. (Am.Compl.¶ 12.) CBI structured the purchase by creating a new subsidiary called Holsin, Inc. ("Holsin"), to acquire all of HDC's assets. (Am.Compl.¶ 12.) The closing occurred on November 22, 1993, when the parties entered into an Asset Purchase Agreement in which Holsin purchased substantially all of HDC's assets for $5.5 million. (Am.Compl.¶ 17.) At the closing, Simon, Terry, and CBI also entered into Consulting and Non–Competition Agreements, through which Plaintiffs would receive significant future income in exchange for promises to provide services to Holsin and not to compete with it. (Am.Compl.¶ 18.) Under the Agreements, Simon was to receive $2.5 million and Terry $1.5 million. (Am.Compl.¶ 51, 54.) Most relevant to this action, CBI executed two guaranties, one in favor of each Plaintiff, guaranteeing, among other things, Holsin's performance under the Asset Purchase and Consulting and Non–Competition Agreements. (Am.Compl.¶ 19.)

Months before the closing, in or about April 1993, CBI's fiscal year ended and an independent certified public accounting firm, Ernst & Young, began the corporation's annual audit. (Am.Compl.¶ 14.) After completing the audit on October 26, 1993, Ernst & Young asked CBI to make a $1.6 million adjustment to its statement of liabilities for

1. Defendant Castello has not joined in the current motion before the Court.

the 1993 fiscal year. (Am.Compl.¶ 15.) On the same day, Ernst & Young also submitted a draft management letter outlining deficiencies in the internal control structure by which CBI tracked its financial health. (Am. Compl.¶¶ 41, 42.) It would appear that Plaintiffs received the Financial Statements with the $1.6 million deficiency noted, but not the draft management letter, although the Amended Complaint is not completely clear on this point. (Am.Compl.¶¶ 41–43, 46.)

Plaintiffs asked for CBI's Financial Statements at a meeting on October 4, 1993, for the purpose of assuring themselves that CBI, as guarantor, was financially able to meet Holsin's obligations under the Asset Purchase and the Consulting and Non–Competition Agreements." (Am.Compl.¶¶ 13, 47.) Plaintiffs received the statements at a meeting with Cannavo and CBI Vice–President, Paul Rogers, on October 27, 1993. (Am. Compl.¶ 28.) Plaintiffs allege that they would not have entered into the transaction if they had known that the Financial Statements were incorrect. (Am.Compl.¶¶ 44, 47.)

On November 7, 1993, a few days after the closing, Castello and Lacey were informed of accounting improprieties within CBI by Stephen Young ("Young"), CBI's Regional Vice–President of Finance. (Am.Compl.¶ 34.) Young was hired by CBI on November 1, 1993, and is alleged to have discovered, after a brief investigation of less than one week, approximately $5 million in unrecorded liabilities. (Am.Compl.¶ 34.) Plaintiffs allege that the recording of the $5 million in liabilities would have substantially impacted the Financial Statements provided to Plaintiffs. (Am.Compl.¶ 34.) Although Young did not inform Cannavo about the unrecorded liabilities, Plaintiffs allege that Cannavo later learned of Young's allegation. (Am. Compl.¶ 35.)

In March, 1994, Ernst & Young withdrew and rescinded its audit, stating that the audit did not truthfully and accurately reflect the financial position of CBI. (Am.Compl.¶ 22.) On August 11, 1994, CBI Holding, CBI, and all of their wholly owned subsidiaries, filed for protection under Chapter 11 of the Bankruptcy Code. (Am.Compl.¶ 23.) During proceedings in the Bankruptcy Court, an additional $7 million in unrecorded liabilities for CBI's 1993 fiscal year were uncovered. (Am. Compl.¶ 15.)

The Bankruptcy Court has authorized CBI to reject the Consulting and Non–Competition Agreements. If the Agreements are rejected, Plaintiffs will not receive the remainder of payments due them from CBI under those Agreements. (Am.Compl.¶ 26.) Plaintiffs have brought suit against Castello, Cannavo, and Lacey in this Court, alleging that Defendants either fraudulently or negligently misrepresented CBI's financial health. Defendants Lacey and Cannavo move to dismiss the Amended Complaint.

## II.  DISCUSSION

### A.  Rule 9(b) Motion to Dismiss

Rule 9(b) of the Federal Rules of Civil Procedure requires that in "all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed.R.Civ.P. 9(b). The particularity requirements of Rule 9(b) have also been found to apply to claims for negligent misrepresentation. *In Re Leslie Fay Companies, Inc. Securities Litigation*, 918 F.Supp. 749, 766 (S.D.N.Y.1996); *Garcia v. Spanish Broadcasting System, Inc.*, 1993 WL 177936, at *3 (S.D.N.Y.1993). The purpose behind Rule 9(b)'s heightened pleading requirement is to "provide a defendant with fair notice of a plaintiff's claim, to safeguard a defendant's reputation from improvident charges of wrongdoing and to protect a defendant against the institution of a strike suit." *Acito v. IMCERA Group, Inc.*, 47 F.3d 47, 52 (2d Cir.1995) (quoting *O'Brien v. Nat'l Property Analysts Partners*, 936 F.2d 674, 676 (2d Cir.1991)); *DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir.1987); *Shahzad v. H.J. Meyers & Co., Inc.*, 923 F.Supp. 57, 59 (S.D.N.Y. 1996).

To satisfy the particularity requirements of Rule 9(b), a Complaint alleging fraud must specify the time, place, speaker, and content of the alleged statements and explain why the statements were fraudulent. *Acito*, 47 F.3d at 51; *T.T. Exclusive Cars, Inc. v. Christie's Inc.*, 1996 WL 737204, at *5

(S.D.N.Y. Dec. 24, 1996). "Mere conclusory allegations of fraudulent or deceptive behavior are insufficient to satisfy Rule 9(b)." *Carlucci v. Owens–Corning Fiberglas Corp.*, 646 F.Supp. 1486, 1489 (E.D.N.Y.1986). Additionally, where multiple Defendants are alleged to have committed fraud, the Complaint must "allege specifically the fraud perpetrated by each defendant." *Natowitz v. Mehlman*, 542 F.Supp. 674, 676 (S.D.N.Y. 1982).

■ Because a Plaintiff cannot be expected to plead a Defendant's state of mind with particularity, *Shahzad*, 923 F.Supp. at 59, Rule 9(b) provides that "[m]alice, intent, knowledge and other condition of mind of a person may be averred generally." This relaxation of Rule 9(b)'s particularity requirement is not, however, a "license to base claims of fraud on speculation and conclusory allegations." *Acito*, 47 F.3d at 52 (quoting *Wexner v. First Manhattan Co.*, 902 F.2d 169, 172 (2d Cir.1990)). A Plaintiff is still required to "allege facts that give rise to a strong inference of fraudulent intent." *Acito*, 47 F.3d at 52; *Shahzad*, 923 F.Supp. at 60. The requisite strong inference of fraudulent intent may be shown either "(a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir.1994).

■ Accepting as true the factual allegations in the Amended Complaint and drawing all inferences in favor of the Plaintiffs, as the Court must when deciding a motion to dismiss under Rule 9(b), *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1174 (2d Cir.1993), the Court finds that Plaintiffs have failed to plead either fraud or negligent misrepresentation with the required particularity. To begin with, Plaintiffs have failed to attribute any fraudulent statement or misrepresentation to either Lacey or Cannavo. Nowhere in the Amended Complaint do Plaintiffs explicitly state that either Lacey or Cannavo made a fraudulent statement or misrepresentation. Instead, Plaintiffs rely on general, conclusory allegations to imply that Lacey

and Cannavo engaged in fraudulent conduct and made misrepresentations. For example, Plaintiffs allege that Cannavo engaged in negotiations with Plaintiffs, but fail to state what, if any, fraudulent statements or misrepresentations he made during those negotiations. (Am.Compl.¶ 12.) Moreover, the Amended Complaint does not allege that Lacey was even present and or part in those negotiations.

Plaintiffs also allege that Cannavo attended the meeting at which the Asset Purchase and Consulting and Non–Competition Agreements were signed, and that he attested to the parties' signatures on the Agreements in his capacity as secretary of the corporation. (Am.Compl.¶¶ 18, 19.) Plaintiffs do not allege, however, that Cannavo was a party to the Agreements or that Cannavo stated or implied during that meeting that the guaranties in the Agreements were his and not those of the corporation. Plaintiffs also do not allege that Lacey was present at the meeting during which the Agreements were signed or that Lacey was a party to the agreements.

The Amended Complaint is also replete with sweeping references to defendants, without any specific reference to either Lacey or Cannavo. For example, Plaintiffs allege that Defendants (1) acquiesced in the false and misleading statements with knowledge of their falsity; (2) had possession, control and access to CBI's records and books and were fully cognizant of the corporation's business condition; and (3) knew that Plaintiffs were relying on the Financial Statements in entering into the deal. (Am. Compl.¶¶ 31, 33, 47.) Plaintiffs fail, however, to specify what Lacey or Cannavo knew or what role each of them played in the fraud, as required by Rule 9(b). *Natowitz*, 542 F.Supp. at 676.

■ Plaintiffs' fraud and negligent misrepresentation counts are erroneously premised on the notion that Cannavo, as a director and officer of CBI, and Lacey, as a director of CBI, are personally responsible for the representations of CBI. It is well established under New York law that "a corporate officer or director is liable for the torts of the corporation only when he or she knowingly participated in the wrong or, in the case of fraud, had knowledge of the misrepresentation."

*American Feeds and Livestock Co. v. Kalfco, Inc.*, 149 A.D.2d 836, 540 N.Y.S.2d 354, 355 (3d Dep't), *appeal denied*, 74 N.Y.2d 608, 545 N.Y.S.2d 104, 543 N.E.2d 747 (1989); *see also People v. American Motor Club, Inc.*, 179 A.D.2d 277, 582 N.Y.S.2d 688, 692 (1st Dep't 1992), *appeal dismissed*, 80 N.Y.2d 893, 587 N.Y.S.2d 909, 600 N.E.2d 636 (1992). Thus, the statements of CBI can be attributed to Cannavo or Lacey only if Plaintiffs can establish either that Cannavo or Lacey knowingly participated in the fraud, or that they had knowledge of it.

Plaintiffs attempt to establish that Lacey and Cannavo knowingly participated in the wrong by alleging that CBI's Board of Directors, of which Lacey and Cannavo were members, voted to approve the contemplated transaction with Plaintiffs and authorized the issuance of the guaranties. (Am.Compl.¶ 30.) Plaintiffs fail to establish, however, that Lacey and Cannavo were present during the Board's vote and, if present, voted in favor of the approval. Plaintiffs also attempt to show that Cannavo knowingly participated in the wrong because he was present during negotiations and attested to the signatures on the Agreements. (Am.Compl.¶¶ 18, 19.) Such a showing, as noted above, is insufficient to establish that Cannavo participated at all, let alone knowingly, in any wrong.

Plaintiffs likewise fail in attempting to establish that Lacey and Cannavo had knowledge of any fraud or misrepresentation. Plaintiffs allege that Lacey and Cannavo had knowledge that the guaranties were fraudulent or materially misleading because they were aware that Stephen Young, CBI's regional vice president of finance, resigned eight days after being hired because of alleged accounting improprieties. (Am. Compl.¶¶ 34, 35.) Young is alleged to have told Lacey and Castello that CBI failed to record approximately $5 million in liabilities; Cannavo later learned of this allegation. (Am.Compl.¶¶ 34, 35.) Plaintiffs contend that because Lacey and Cannavo were aware of Young's allegation, they knew or recklessly disregarded facts which indicated that the Financial Statements were materially misleading, as were any guaranties regarding those statements. (Am. Compl. ¶ 37.)

Such conclusory and speculative allegations run afoul of Rule 9(b)'s particularity requirements, *Acito*, 47 F.3d at 52, and fail to establish knowledge of any fraud or misrepresentation by Lacey and Cannavo. In the absence of proof that Cannavo or Lacey knowingly participated in the fraud or had knowledge of the misrepresentation, the representations of CBI cannot be attributed to Lacey and Cannavo. *American Feeds*, 540 N.Y.S.2d at 355. Accordingly, Plaintiffs have failed to identify, as required by Rule 9(b), any statements made by Lacey or Cannavo.

■ Plaintiffs also fail to explain, as required by Rule 9(b), why the guaranties are fraudulent or misrepresentations. *See, e.g., Acito*, 47 F.3d at 51; *T.T. Exclusive Cars*, 1996 WL 737204, at *5. Plaintiffs contend that because Lacey and Cannavo were aware of Young's allegation of accounting improprieties, they knew or should have known that the Financial Statements, and the guaranties as to those statements, were misleading. Under New York law, however, Lacey and Cannavo, as directors of CBI, were justified in relying on the Financial Statements prepared by Ernest & Young, despite the allegation of accounting improprieties by an employee. *Berman v. Le Beau Inter-America, Inc.*, 62 B.R. 262, 268 (S.D.N.Y.1986). New York Business Corporation Law § 717 provides, in relevant part:

A director shall perform his duties as a director ... in good faith and with that degree of care which an ordinarily prudent person in a like position would use under similar circumstances. In performing his duties, a director shall be entitled to rely on information, opinions, reports or statements including financial statements and other financial data, in each case prepared or presented by: * * * (2) counsel, public accountants or other persons as to matters which the director believes to be within such person's professional or expert competence.

N.Y. Bus. Corp. Law § 717 (McKinney 1986). Thus, absent a showing of bad faith or the lack of the required degree of care, which Plaintiffs have failed to make, Lacey and Cannavo, as directors, were entitled to rely on the Financial Statements prepared by the corporation's accountants. *Berman*, 62 B.R. at 268.

Without additional supporting facts, Plaintiffs' Amended Complaint lacks the particu-

larity required to support a claim for fraud or negligent misrepresentation, as Plaintiffs have failed to attribute any fraudulent statement or misrepresentation to Lacey or Cannavo and have failed to explain why the guaranties are fraudulent or misrepresentations. Accordingly, Defendants' motion is granted.

## B. Leave to Replead

Rule 15(a) of the Federal Rules of Civil Procedure provides that permission to amend a pleading "shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). "[I]t is the usual practice upon granting a motion to dismiss to allow leave to replead." *Cohen v. Citibank*, 1997 WL 88378, at *2 (S.D.N.Y. Feb. 28, 1997); *Intermetals Corp. v. M/V Arctic Confidence*, 1993 WL 312903, at *1 (S.D.N.Y. Aug. 12, 1993). Absent a showing of undue delay, bad faith, or dilatory motive on the part of the movant, undue prejudice to the opposing party, or the futility of the amendment, a Plaintiff should be granted leave to replead. *Protter v. Nathan's Famous Sys., Inc.*, 904 F.Supp. 101, 111 (E.D.N.Y.1995) (citing *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962)).

While the Court finds Plaintiffs' Amended Complaint insufficient, "the Court cannot determine that the plaintiff[s] could not, under any circumstances, sufficiently allege [their] claims." *Protter*, 904 F.Supp. at 111. Therefore, Plaintiffs are· hereby granted leave to file a second Amended Complaint. With regard to any amendment, Plaintiffs are cautioned against perfunctory substantive or cosmetic changes. *Id.*[2]

## III. CONCLUSION

Defendants' Motion to Dismiss is GRANTED. Plaintiffs are GRANTED leave to re-

plead in accord with the Court's decision. Plaintiffs shall file their Amended Complaint with twenty (20) days of the date of this Order.

## SO ORDERED

---

2. The Court notes with approval Judge Leisure's thoughtful comments in *Spier v. Erber*, 1990 WL 71502, at *10 n. 8 (S.D.N.Y. May 24, 1990): [I]t has become an all too common practice for litigants granted leave to replead to make only minor changes in the original complaint based on an overly restrictive reading of the dismissing court's order, prompting a second motion to dismiss. An amended complaint which fails to replead with sufficient particularity after a finding of lack of specificity may well be re-

garded by the Court as a frivolous filing in isolation of Fed.R.Civ.P. 11. Conversely, a renewed Rule 9(b) motion [to dismiss] after an adequate and thorough repleading can also be viewed as frivolous.

In the event that Plaintiffs file an Amended Complaint that is insufficiently pled or not in accord with this Court's decision, the Court may, on motion, take appropriate action. *see also, Mathon v. Marine Midland Bank*, 875 F.Supp. 986, 1003 (E.D.N.Y.1995).