[Cite as *Vienna Beauty Prods. Co. v. Cook*, 2015-Ohio-5017.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MIAMI COUNTY**

| | | |
|---|---|---|
| VIENNA BEAUTY PRODUCTS CO. | : | |
| | : | |
| Plaintiff-Appellant/Cross Appellee | : | Appellate Case No. 2015-CA-1 |
| | : | |
| v. | : | Trial Court Case No. 12-CV-806 |
| | : | |
| BRENDA COOK, et al. | : | (Civil Appeal from |
| | : |  Common Pleas Court) |
| Defendants-Appellees/Cross Appellants | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 4th day of December, 2015.

. . . . . . . . . .

BARRY W. MANCZ, Atty. Reg. No. 0011857, and CYNTHIA WESTWOOD, Atty. Reg. No. 0079435, Rogers & Greenberg, LLP, 2160 Kettering Tower, Dayton, Ohio 45423
        Attorneys for Plaintiff-Appellant/Cross-Appellee, Vienna Beauty Products Co.

ROBERT J. HUFFMAN, JR., Atty. Reg. No. 0040316, 80 South Plum Street, Troy, Ohio 45373
        Attorney for Defendants-Appellees/Cross-Appellants, Rarely Idle Ranch, Accurate
        Construction Equipment Repair, LLC, and Roderick Cook

ANDREW R. PRATT, Atty. Reg. No. 0063764, 18 East Water Street, Troy, Ohio 45373
        Attorney for Defendant-Appellee, Brenda Cook

. . . . . . . . . . . . .

HALL, J.

{¶ 1} Plaintiff-appellant Vienna Beauty Products Co. ("Vienna") appeals from the trial court's entry of a directed verdict in favor of defendant-appellee Roderick Cook on its claim for conversion. In a cross appeal, defendant-cross appellant Accurate Construction Equipment Repair, LLC ("ACER") appeals from the trial court's entry of summary judgment against it on Vienna's claim for conversion.

{¶ 2} The record reflects that Vienna filed a December 2012 complaint against Brenda Cook, Roderick Cook, ACER, and Rarely Idle Ranch, LLC ("Rarely Idle"). The complaint alleged that Mrs. Cook had worked as a bookkeeping manager for Vienna until November 2012. It further alleged that her husband, Mr. Cook, owned ACER and Rarely Idle. According to the complaint, Mrs. Cook stole hundreds of thousands of dollars from Vienna by forging checks. In essence, the complaint alleged that the Cooks and ACER had acted in complicity and in a conspiracy to convert and funnel the stolen money from Vienna into and through ACER's bank account.

{¶ 3} As relevant here, Vienna's complaint proceeded against the Cooks and ACER on claims of conversion and civil conspiracy.[1] In January 2014, Mr. Cook, ACER, and Rarely Idle moved for summary judgment. (Doc. #23). Vienna opposed the motion and filed its own summary judgment motion. (Doc. #25). After briefing, the trial court found

---

[1] We note that Rarely Idle was named as a defendant for purposes of injunctive relief because Mr. Cook owned the company and Vienna feared an attempt might be made to place its assets beyond the reach of creditors. (Doc. #48 at 3-4). In any event, Vienna formally withdrew any potential substantive claims against Rarely Idle before trial. (Doc. #42 at 3).

Vienna entitled to summary judgment against Mrs. Cook on its claims against her because she admitted stealing the checks at issue. The trial court also found Vienna entitled to summary judgment against ACER on the conversion claim. It found genuine issues of material fact, however, precluding summary judgment for Vienna on its claims against Mr. Cook. Finally, the trial court denied the defendants' summary judgment motion in its entirety. (Doc. #33).

{¶ 4} The unresolved claims came before the trial court for a June 2014 bench trial. After hearing evidence, the trial court directed a verdict for Mr. Cook on the conversion and civil conspiracy claims against him. The trial court found ACER liable to Vienna for civil conspiracy. It also found Vienna entitled to statutory treble damages against Mrs. Cook and ACER, resulting in a final judgment against each of these defendants for $1,224,000. This appeal followed.

{¶ 5} In its sole assignment of error, Vienna contends the trial court erred in directing a verdict for Mr. Cook on its conversion claim. In the cross appeal, ACER asserts that the trial court erred in entering summary judgment against it for conversion.[2]

{¶ 6} In entering summary judgment against ACER on the conversion claim, the trial court reasoned:

> [ACER] only maintained one bank account into which flowed much
> of the Plaintiff's funds which were converted. Brenda Cook acknowledged
> she was the manager agent for ACER.

[2] The parties' briefs apparently focus exclusively on the conversion claim because the civil-conspiracy claim necessarily depends on the conversion claim. *See Rachlow v. Dee*, 2d Dist. Montgomery No. 18927, 2002 WL 91288, *4 (Jan. 25, 2002) ("Pursuant to Ohio law, a civil conspiracy claim standing alone cannot be the subject of a civil action.").

Both Cooks further admitted they had credit cards issued to ACER which they both used to pay for personal bills.

Most interesting is the testimony that ACER gives nothing in writing either before or after work is done for the customer.

The Court finds no genuine issue of material fact and that the Plaintiff is entitled to judgment as a matter of law against ACER in the amount of $408,484.23, on the claim for conversion, since Brenda Cook was acting as agent for ACER when she essentially laundered the stolen money through the ACER account. ACER is also subject to the statutory treble damages.

(Doc. #33 at 3) (Citations omitted).

{¶ 7} The trial court subsequently denied ACER's motion for reconsideration of the interlocutory summary judgment ruling against it. In support, the trial court reasoned:

* * * [T]here was [deposition] testimony from Brenda Cook that ACER neither had nor kept any organizational documents except the Articles of Incorporation, and that she was the managing agent of ACER. She also testified that she and Rodney had credit cards issued in the name of ACER that each of them then used for personal items.

Rodney Cook testified that ACER only had one bank account and all the checks Brenda endorsed went through this one account. Rodney claimed to know nothing about the finances of ACER and that he even let his wife sign his name to the tax returns. He further noted ACER puts nothing in writing when it does work for a customer. There was testimony

this has been going on since the incorporation in 2004 and the financial records of ACER are clearly fabricated.

Acts of an agent done within the discharge of her duties and within the scope of her authority, whether the authority is express, implied, or apparent, are binding on the principal.

In an apparent authority analysis, the acts of the principal, rather than the agent, are examined.

In the present case, ACER gave Brenda Cook the full, unchecked authority to run it. In addition, ACER never operated as an independent entity; it never had any organizational documents; never kept a system of checks and balances; and never kept written records of work performed for customers.

ACER appeared to exist for the purpose of allowing Brenda Cook to use it as a conduit for the money she was embezzling.

(Doc. #38 at 1-2) (Citations omitted).

{¶ 8} In directing a verdict for Mr. Cook at trial on the conversion claim, however, the trial court orally reasoned:

On the conversion claim, the Court would find that the evidence clearly shows that Brenda Cook committed criminal and civil violations in her embezzlement of money from Vienna Beauty Products.

The evidence does not show Mr. Cook directly participated in taking the money or even ask where the money was coming from which nevertheless permitted him to do his construction. The evidence does show

he benefitted from the increased funds flowing into the ACER account because ACER paid his personal credit card bills. The question is was that ACER money or Vienna money he spent because the money was co-mingled apparently by Ms. Cook in this one lump account.

While the Court has deep suspicions about the extent of Mr. Cook's knowledge about this entire scenario it's not based upon the evidence. I'm afraid it's based upon the Court's own personal experience of human events.

However, the Court must find that the Plaintiff has not established by a preponderance of the evidence that Roderick Cook converted the funds himself from Vienna nor does it show he signed any of the forged checks or did anything else which would allow the Court to infer that he did have direct knowledge and was actually participating in the conversion.

Therefore, the Defendant's motion for directed verdict as to Roderick Cook is granted.

(Doc. #48 at 44-45).

{¶ 9} The trial court reiterated its findings in a final judgment entry, stating:

This Court found that the Defendant Roderick Cook did not directly participate in the embezzlement of Plaintiff's money and that Defendant Roderick Cook did not inquire of Defendant Brenda Cook as to where the embezzled funds, which facilitated his construction work, had come from. This Court found that Roderick Cook benefitted from Plaintiff's funds going into his business account in the name of Accurate Construction Equipment

Repair, LLC because the business account was used to pay Roderick Cook's personal credit card bills. This Court found that embezzled funds were commingled by Defendant Brenda Cook into the single business account in the name of Accurate Construction Equipment Repair, LLC. While this Court is deeply suspicious as to Roderick Cook's knowledge of Brenda Cook's activities, this Court found that Plaintiff had not established by a preponderance of the evidence that Roderick Cook actually converted Plaintiff's funds himself, did not endorse any of the forged checks or otherwise do anything which would allow an inference that Defendant Roderick Cook had direct knowledge of and was actually participating in the conversion of Plaintiff's money. According, this Court finds that Roderick Cook is entitled to judgment on both civil conspiracy and conversion.

(Doc. #42 at 2).

{¶ 10} On appeal, Vienna asserts that Mr. Cook benefitted from the checks Mrs. Cook converted and placed in ACER's bank account. Vienna argues that he is liable for conversion due to the unlawful conduct of Mrs. Cook, ACER's agent, particularly where he provided no oversight or supervision and turned a blind eye toward her activities with respect to ACER. Under these circumstances, Vienna contends it was not required to prove Mr. Cook's actual knowledge of Mrs. Cook's conversion. For his part, Mr. Cook claims he cannot be held liable for conversion where he did not steal any checks and had no knowledge of his wife's criminal activity. Mr. Cook additionally claims Vienna failed to establish with any degree of certainty that he personally benefitted from the stolen checks, which Mrs. Cook deposited and co-mingled with ACER's own legitimate funds.

{¶ 11} As for ACER, it argues on cross appeal that it cannot be held liable for Mrs. Cook's conversion because she was not acting within the scope of her employment and her illegal behavior was not calculated to promote ACER's business. ACER also claims the record contains no evidence that it benefitted from Mrs. Cook's co-mingling of the stolen checks in ACER's business account. Alternatively, even if it did derive some benefit from the funds, ACER argues that it cannot be held liable for the entire amount Mrs. Cook converted. At most, ACER claims it should be held liable only to the extent it benefitted from Mrs. Cook's activity.

{¶ 12} Upon review, we see no error in the trial court's entry of a directed verdict in favor of Mr. Cook personally. "A cause of action for conversion is founded upon '*an intentional exercise of dominion or control* over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel." (Emphasis added).   *Hodges v. Byars*, 2d Dist. Montgomery No. 12839, 1992 WL 113027, *4 (May 28, 1992), quoting Restatement of the Law 2d, Torts (1965) 431, Section 222A. "Wrongful purpose or intent is not a necessary element of conversion; thus, a defendant is liable even if he is acting under a misapprehension or mistake." *Gordon v. Morris*, 2d Dist. Greene No. 2000-CA-69, 2001 WL 85797, *4 (Feb. 2, 2001). The only intent required is the intent to exercise dominion or control over the property. *Hodges* at *4.

{¶ 13} Here we see no evidence that Mr. Cook, himself, ever intentionally exercised dominion or control over the checks Mrs. Cook stole from Vienna. The record reflects that she stole the checks in her capacity as a bookkeeper for Vienna. She then

deposited the stolen checks into ACER's business account. Finally, she withdrew money and wrote checks from ACER's account to pay for various things, some of which benefitted her personally, some of which benefitted her and her husband, and some of which appear to have benefitted the company. Although Mr. Cook was a signatory on the ACER account along with his wife, the trial court was unable to find, by the preponderance of the evidence, that he personally converted any funds, signed any forged checks, or "did anything else" to support an inference that he knew about, or participated in, his wife's conversion activities. (Doc. #48 at 45).

{¶ 14} The record supports the trial court's conclusion. Mr. Cook testified at trial that his wife conducted all of their personal and business-related financial transactions. (Trial Tr. at 9; *see also* Mr. Cook depo. at 139). When money came into the ACER account, Mrs. Cook did "what she wanted with it" or "did with it as she pleased." (Trial Tr. at 9; Mr. Cook depo. at 35). Mr. Cook never looked at bank statements or any other financial records. (Trial Tr. at 8). Although the Cooks both had business and personal credit card bills that were paid out of the ACER account, Mrs. Cook was the one responsible for issuing checks to pay the bills. (*Id.* at 15).

{¶ 15} In short, the record supports a determination that Mrs. Cook, acting without Mr. Cook's knowledge, stole checks from Vienna, deposited the checks in ACER's business account, and then withdrew money to pay various expenses. On these facts, Vienna failed to prove, by the preponderance of the evidence, that Mr. Cook had knowledge of his wife's actions, that he personally exercised dominion or control over Vienna's checks or the proceeds therefrom, or that he otherwise participated in her conversion. Although Mrs. Cook placed the stolen checks into a business account over

which both Cooks had authority, the record supports a finding that Mr. Cook did not intentionally exercise dominion or control over the converted funds. Indeed, we fail to see how Mr. Cook *intentionally* could have exercised dominion or control over something he did not know existed. Therefore, with respect to Mr. Cook, Vienna failed to establish the elements of a conversion claim.

{¶ 16} In reaching the foregoing conclusion, we reject Vienna's suggestion that Mr. Cook is liable for conversion simply because he "benefitted" from Mrs. Cook's theft of the checks. At least one Ohio appellate court correctly has recognized that "benefit is not an element" of a conversion claim. *Keybank Natl. Assoc. v. Guarnieri & Secrest, PLL*, 7th Dist. Columbiana No. 07 CO 46, 2008-Ohio-6362, ¶ 16. Therefore, with regard to Mr. Cook's liability for conversion, whether he "benefitted" from his wife's misconduct is "irrelevant" to Vienna's conversion claim.[3] This is particularly true in the absence of evidence that he even knew about her theft of the checks.

{¶ 17} Finally, we are unpersuaded by Vienna's claim that Mr. Cook is personally liable for conversion based on his status as the sole owner of ACER, his incorporated construction company. In support of this proposition, Vienna relies on the following language from *Schafer v. RMS Realty*, 138 Ohio App.3d 244, 741 N.E.2d 155 (2d Dist. 2000):

---

[3] In *Keybank*, the argument was that the defendants *should not* have been liable for conversion because they *had not* benefitted from their actions. The Seventh District rejected this argument, noting that a "benefit" is not an element of a conversion claim and that whether an alleged converter "benefitted" is irrelevant. Here Vienna argues that Mr. Cook *should be* liable for conversion because he *did benefit* from his wife's actions. Just as in *Keybank*, however, Vienna's argument fails because evidence of a "benefit" is not part of a conversion claim. The relevant inquiry is whether Mr. Cook *intentionally exercised dominion or control* over Vienna's money, not whether he derived some benefit from Mrs. Cook stealing the checks.

"* * * All acts and contracts of an agent done or made within the discharge of his duties, and within the scope of his authority, whether that authority is express, implied, or apparent, are obligatory upon the principal, and no ratification or assent on the latter's part is necessary to give them validity. * * * The principal is always liable to third persons for misfeasances and the omission of duty of his agent, in all cases within the scope of his agency, equally as for acts of his own although the agent himself is liable for positive wrongful acts and misfeasances committed while acting as agent."

*Id.* at 292, quoting *Foust v. Valleybrook Realty Co.*, 4 Ohio App.3d 164, 446 N.E.2d 1122 (6th Dist. 1981).

{¶ 18} Vienna's argument is that Mrs. Cook was a bookkeeper agent of her husband's construction company, ACER. Therefore, Vienna argues that he is personally liable for her conversion activity, which it claims was done within the scope of her authority as ACER's agent. We disagree. Notably, *Schafer* involved claims brought against a *partnership* and its *partners* for converting another partner's interest in the partnership. On this issue, the members of the partnership, as principals, were found liable for the acts of their authorized agent, who was also a "*de facto* partner." *Schafer* at 292.

{¶ 19} Unlike *Shafer*, Mr. Cook's construction company is not a partnership. It is a limited liability corporation. (Mr. Cook depo. at 28-30). For purposes of the agent-principal analysis in *Schafer*, *supra*, we believe the relevant potentially-liable party when a corporation is involved is the corporation itself, not its sole shareholder, at least absent

grounds for disregarding the corporate form and piercing the corporate veil.[4] Thus, ACER, the company, may be liable for acts done by Mrs. Cook while acting as her husband's bookkeeper (an issue we will address more fully below). But we are unpersuaded that Mr. Cook, personally, may be held liable for his wife's conversion merely based on his status as ACER's sole shareholder, particularly in light of the trial court's finding that his knowledge of her tortious activity was not proven. This conclusion is consistent with rulings from a number of jurisdictions. *Cf. Speer v. Dighton Grain, Inc.*, 229 Kan. 272, 281, 624 P.2d 952, (1981) (holding that "an officer of a corporation is not personally liable for a conversion committed by the corporation or one of its officers merely by virtue of the office he holds; he must participate or have knowledge amounting to an acquiescence or commit a breach of duty he owes to the owner of the property

---

[4] Although the parties do not directly address piercing the corporate veil, we acknowledge the trial court's findings that "ACER never operated as an independent entity" and that "ACER appeared to exist for the purpose of allowing Brenda Cook to use it as a conduit for the money she was embezzling." (Doc. #38 at 2). If these findings were supported by the evidence, they would lend support to a piercing-the-corporate-veil theory. Without question, the evidence supports a finding that ACER's bookkeeping and finances were in disarray, that some corporate formalities were not followed, and that Mr. Cook maintained no oversight over his wife's work on behalf of ACER. However, we do not find support for the proposition that "ACER never operated as an independent entity" or that "ACER appeared to exist for the purpose of allowing Brenda Cook to use it as a conduit for the money she was embezzling." As a threshold matter, these findings by the trial court are at odds with the trial court's additional finding that Mr. Cook's knowledge of Mrs. Cook's misconduct had not been proven. In addition, the evidence establishes that ACER *did* operate as an independent entity and *did* perform real work. Mr. Cook provided uncontroverted trial testimony in which he reviewed ACER's profit-and-loss statements, tax returns, and other records. (*See, e.g.*, Trial Tr. at 22-23). He also provided deposition testimony in which he stated that, through ACER, he earned approximately $12,000 per month in 2012 working as a commercial heavy-equipment-repair specialist. (Mr. Cook depo. at 36-37, 47). He further testified that in the past year one client, Ulliman-Schutte, had paid him $143,000 for his labor. (*Id.* at 181). In light of this uncontroverted testimony, ACER plainly maintained some level of an existence and a purpose separate and apart from facilitating Mrs. Cook's theft from Vienna.

before he will be held liable"); *Air Traffic Conference of Am., a Div. of Air Transp. Ass'n of Am. v. Marina Travel, Inc.*, 69 N.C. App. 179, 182, 316 S.E.2d 642 (1984) ("The plaintiff has also offered no evidence that would indicate that the defendant should be held liable on the basis of her officer status. Under North Carolina law, an officer cannot be held individually liable for the tortious conversion of property by the corporation or other corporate agents in the absence of her participation therein."); *Airlines Reporting Corp. v. Pishvaian*, 155 F. Supp. 2d 659, 666-67 (E.D. Va. 2001) ("Under Virginia law, an officer or director of a corporation is liable only for those intentional torts he or she commits or authorizes on behalf of the corporation. Although plaintiff need not show that defendant personally benefitted from the conversion, plaintiff must establish that defendant participated in, ratified, or otherwise authorized the conversion. * * * [I]mposing liability on defendant on the basis of the existing record would be tantamount to holding corporate officers liable for conversion committed by the corporation acting through its employee merely because the officer negligently hired or supervised the errant employee. No Virginia case supports imposing liability on a corporate officer, director, or sole shareholder in these circumstances."); *Am. Feeds & Livestock Co. v. Kalfco, Inc.*, 149 A.D.2d 836, 837, 540 N.Y.S.2d 354 (1989) ("[O]fficers or directors may not be held liable simply on the basis of their authority[.] * * * [T]here must be evidence that Caroline Holman knowingly fostered the conversion or was aware of the conversion and declined to exercise her ability to set it right."); *Universal Lending Corp. v. Wirth Companies, Inc.*, 392 N.W.2d 322, 326 (Minn. Ct. App. 1986) ("An officer of a corporation may be liable for the corporation's conversion of another's property if the officer actually participated in the tortious transaction.").

**{¶ 20}** Finally, we are unpersuaded by Vienna's citation to *First Nat'l Bank of New Bremen v. Burns*, 88 Ohio St. 434, 103 N.E. 93 (1913), which Vienna claims controls the outcome regarding Mr. Cook's liability for conversion. Having reviewed the case, we conclude that, if anything, it supports our finding of no liability on Mr. Cook's part. In *New Bremen*, the defendant was the president and active manager of the plaintiff bank. In that capacity, he sold and discounted notes to the bank. In so doing, he acted personally for himself, as endorsee, and also for the bank, as its president and manager. *Id.* at 93-94. Under these circumstances, the bank was an innocent holder in due course unless the knowledge of the defendant as to what he had done could be imputed to the bank. *Id.* at 94. Because the defendant effectively wore two hats and handled both sides of the transaction, the Ohio Supreme Court held that his knowledge about the transaction could be imputed to the bank. The court applied the general rule that "the acts and knowledge of [the defendant], as president and active manager of the bank and hence its agent in purchasing notes from [the defendant] the individual, become and are the acts and knowledge of the bank." *Id.* at 94. The court found application of this rule particularly appropriate because "[the defendant] as manager of the bank cannot unknow what [the defendant] the man all the while knew." *Id.* at 95. The *New Bremen* court also stressed that the dispute before it involved contract law, not tort law, and explained: "Manifestly, in a case sounding in tort there would be no presumption in law that the wrongful act of the agent was the act of the principal unless actual authority to do the act was proven or a subsequent ratification after all the facts and circumstances of the act were known. No man is presumed to do wrong. There is in fact, in law, and in good morals a reason for the distinction that there may not be that legal identity between principal and agent in a

case of tort that there is in a case of contract." *Id.* at 95.

{¶ 21} *New Bremen* bears no similarity to Vienna's argument regarding Mr. Cook's personal liability, as opposed to ACER's liability, based on the actions of his wife. Even setting aside the contract-tort distinction drawn in *New Bremen,* Vienna's assignment of error is not seeking to hold ACER liable for conversion on a theory that Mrs. Cook, the bookkeeper agent of ACER, and Mrs. Cook, the private tortfeasor, necessarily had the same knowledge regarding her conversion of Vienna's funds into ACER's account. If that were the argument under Vienna's assignment of error on appeal, *New Bremen* would bear some similarity to the facts before us. But it is not. Rather, Vienna argues in its appeal that because Mrs. Cook was ACER's sole bookkeeper agent, her knowledge regarding her tortious activity necessarily is imputed to Mr. Cook personally. We do not believe a fair reading of *New Bremen* supports this conclusion, which is contrary to our analysis above.

{¶ 22} For the foregoing reasons, we overrule Vienna's sole assignment of error alleging that the trial court erred in entering a directed verdict for Mr. Cook personally on Vienna's conversion claim.

{¶ 23} We turn next to ACER's cross-appeal from the trial court's entry of summary judgment against it on Vienna's conversion claim. ACER asserts that it is not liable because Mrs. Cook was not acting as its agent when she "laundered the stolen money" through its bank account. More specifically, ACER argues:

> * * * The stolen assets were never entered into the books of ACER.
>
> [Mrs.] Cook's theft of the funds and laundering of the funds through the ACER account had no relevance or benefit to the operation of ACER. While

there has been speculation that ACER benefitted from the comingling of the funds, no evidence was submitted to substantiate such a theory. Vienna Beauty submitted no evidence that attempted to segregate or account for which funds, if any, benefitted ACER. The trial court also erred by holding ACER liable for the entire amount stolen by [Mrs.] Cook. At best, ACER would be liable for the amount that [it] actually benefitted from [Mrs.] Cook's conduct. However, ACER is not liable for the intentional and criminal acts of its agent when such conduct was not within the scope of her authority or calculated to promote the business of ACER.

(Brief of cross-appellant ACER at 13).

{¶ 24} Upon review, we see no error in finding ACER liable for conversion based on Mrs. Cook's actions. The record reflects that Mr. Cook was the sole owner and officer of ACER. His wife was the only other person affiliated with the company. Mr. Cook delegated to Mrs. Cook "all" authority to serve as an agent of the company and to perform all bookkeeping tasks, which included receiving and issuing bills and checks. (Doc. #48, Trial Tr. at 15, 25). The trial court correctly found, based on the evidence presented, that Mr. Cook, in his capacity as sole owner and officer of ACER, "gave [Mrs.] Cook full, unchecked authority to run it." (Doc. #38 at 2; Mrs. Cook depo. at 28). Mrs. Cook, alone, endorsed the fraudulent checks drawn on Vienna's account and admittedly deposited all of the stolen funds into ACER's one-and-only bank account. (Doc. # 48, Trial Tr. at 16, 31, 39; Mrs. Cook depo. at 14-15). She also admittedly signed and deposited into ACER's business account all of Vienna's customer's checks that she intercepted before changing the payee from Vienna to ACER. (Doc. #48, Trial Tr. at 34; Mr. Cook depo. at 14-15, 19).

{¶ 25} As a result of Mrs. Cook's actions, it is indisputable that ACER intentionally exercised the requisite "dominion or control" over the converted checks. Indeed, in her role as a bookkeeper-agent for ACER, Mrs. Cook deposited *all* of those checks into ACER's bank account. Regardless of whether Mrs. Cook's knowledge of the wrongfulness of her conduct can be imputed to ACER, "[w]rongful purpose or intent is not a necessary element of conversion; thus, a defendant is liable even if he is acting under a misapprehension or mistake." *Gordon v. Morris*, *supra*, at \*4. In any event, at least one Ohio court has found that a corporation may be liable for conversion even if its agent acts with a criminal intent. *Wilson Freight Forwarding Co. v. Cleveland C. & C. Highway, Inc.*, 74 Ohio App. 54, 57 N.E.2d 796 (1st Dist.1943) (upholding a conversion finding against defendant corporation where one of its agents intentionally took plaintiff's cargo to defendant's dock, reasoning that the agent's "motive—innocent or even praiseworthy in one sense—or culpable or even criminal—is immaterial"). Again, the only "intent" required is the intent to exercise dominion or control over the funds. *Hodges v. Byars*, *supra*, at \*4. Here, Mrs. Cook, an authorized bookkeeper agent of ACER, intentionally placed checks stolen from Vienna into ACER's bank account. Therefore, we conclude that ACER can be held liable in civil conversion on the basis that, acting through its agent, it intentionally exercised dominion or control over the funds at issue.[5]  ACER's assignment of error on cross appeal is overruled.

{¶ 26} Based on the reasoning set forth above, the judgment of the Miami County Common Pleas Court is affirmed.

---

[5] We express no opinion as to whether Mrs. Cook may be liable to ACER for the civil judgment that her conduct enabled Vienna to obtain against ACER. That issue is not before us.

. . . . . . . . . . . . .

DONOVAN, J., and WELBAUM, J., concur.

Copies mailed to:

Barry W. Mancz
Cynthia L. Westwood
Robert J. Huffman, Jr.
Andrew R. Pratt
Miami County Common Pleas Court